UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

COMMODORES ENTERTAINMENT
CORPORATION,

Plaintiff,

Case No.  6 : 14 Cv 1335 - ORL - 37G JK

v.

THOMAS McCLARY, and FIFTH
AVENUE ENTERTAINMENT, LLC,

Defendants.

_____/

## COMPLAINT FOR
## INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Commodores Entertainment Corporation ("Commodores Entertainment") files this Complaint against Thomas McClary ("McClary") and Fifth Avenue Entertainment, LLC. ("Fifth Avenue") (collectively the "Defendants") seeking an injunction and damages on the grounds of trademark infringement, trademark dilution, false designation of origin, passing off, false advertising, unfair competition and violation of Florida's Deceptive and Unfair Trade Practices Act.

## NATURE OF THE CASE

1.      This is an action for trademark infringement, dilution, passing off, false designation of origin and unfair competition pursuant to 15 U.S.C. §§ 1114, 1125(a) and 1125(c), and for related claims under applicable Federal and State law arising out of and in connection with Defendants' unauthorized use of the trademark "The Commodores"

in commerce in connection with the performance of live music and musical recordings as the musical group "The Commodores Featuring Thomas McClary" or the "2014 Commodores."

## PARTIES

2.      Plaintiff Commodores Entertainment is a corporation organized under the laws of the State of Nevada.

3.      Defendant McClary is a singer, songwriter, and former member of musical group, The Commodores.  McClary resides in Orlando, Florida.

4.      Defendant, Fifth Avenue is a Florida Limited Liability corporation owned and/or managed by McClary with its principal place of business at 6007 Beau Lane, Orlando, Florida 32808 that is directly involved in the complained of activities.

## JURISDICTION AND VENUE

5.      Jurisdiction is proper in this Court pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§1331 and 1338 in that this civil case arises under the Trademark Laws of the United States, Lanham Act 15 U.S.C. §1051 *et seq.*

6.      This Court has original jurisdiction over this action over Plaintiff's claims arising under the laws of the United States, particularly under the federal Trademark Act, as amended, 15 U.S.C. §1051 *et seq* and has jurisdiction over any state claims pursuant to 28 U.S.C. § 1331, 1367.

7.      This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. §1367(a) with respect to claims under the laws of the State of Florida, insofar as such claims are so related to other claims over which this Court has original jurisdiction

2

that they form part of the same case or controversy under Article III of the United States Constitution.

8.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and Defendants reside in this District.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

**The History of The Commodores and the COMMODORE Marks**

9.     The Commodores is a Grammy award winning rhythm and blues, funk, and soul music band formed in 1968 that has released more than 40 albums, charted seven number one singles, charted numerous top ten hits and that continues to perform for audiences around the world and record music to this day.

10.     The Commodores was founded by a group of students at the Tuskegee Institute in Tuskegee, Alabama.  The original group members were William King, Lionel Ritchie, Thomas McClary, Milan Williams, Jimmy Johnson, Michael Gilbert, and Andre Callaghan.

11.     The group decided on the name, The Commodores, when King randomly selected the word "commodore" from a dictionary.

12.     The Commodores gained early fame and exposure performing shows throughout Alabama and eventually in New York City.  Their big break came when they served as the opening act for the Jackson 5 on a worldwide tour.  After a successful tour, The Commodores signed a recording contract with MoTown Records in 1972.

3

13.     Through the 1970s, The Commodores recorded and performed their signature funk/soul style of music to international acclaim.

14.     The Commodores recorded 10 albums during this period, and became famous with hits such as "Easy," "Brick House," "Three Times a Lady," and "Too Hot Ta Trot."

15.     In 1978, the members of The Commodores entered into a General Partnership Agreement to form a General Partnership.

16.     A true and correct copy of the General Partnership Agreement is attached hereto as **Exhibit A.**

17.     Additionally, in 1978 The Commodores and Ashburn formed a corporation, Commodores Entertainment Corp.

18.     The General Partnership Agreement was amended in 1981.

19.     A true and correct copy of the Amendment to General Partnership Agreement is attached hereto as **Exhibit B.**

20.     In 1982, after having considerable success apart from The Commodores, Lionel Richie left the group to begin his solo career.  The Commodores carried on without him.

21.     Two years later, in 1984, McClary also left The Commodores to begin a solo career.

22.     In his August 6, 1984 letter, McClary, as President of Thomas McClary Productions, Inc., withdrew from The Commodores by stating that "I hereby confirm my

4

withdrawal from The Commodores Effective as of May 31, 1984. I have certainly enjoyed fourteen years of being with you guys and I wish you the best."

23.     A true and correct copy of the August 6, 1984, letter is attached hereto as **Exhibit C.**

24.     After leaving The Commodores in 1984, McClary signed a solo contract with MoTown Records, and released his first solo album, *Thomas McClary*, in 1985.

25.     Eventually, McClary returned to his home state of Florida and became the Musical Director at his church. He formed his own recording label, and released another solo album, *A Revolution Not a Revival*, in 2008.

26.     For 30 years, until approximately June 5, 2014, McClary has had no relationship or affiliation whatsoever with The Commodores or Commodores Entertainment.

27.     After the departure of McClary, The Commodores hired J.D. Nicholas ("Nicholas") to take over McClary's place in the group.

28.     Despite changes in composition, The Commodores' success continued. In 1986, they received their only Grammy for the single "Nightshift."

29.     Since 1988, The Commodores have been comprised of King, Walter Orange, and Nicholas, and have continued to record and perform around the world.

30.     Over the past 20 years, The Commodores have performed 30 to 50 live concerts each year both in the United States and abroad.

31.     The Commodores continue to perform live around the world to establish its brand and trademark to its loyal fan base and are on pace for 35 to 40 live music performances in the year 2014 both in the United States and abroad.

32.     In fact, in 2014 alone, The Commodores have already performed live at concerts at the following locations:

    a.  January 24-25, 2014, Niagara Falls, Ontario, Canada;

    b.  February 14, 2014, Lincoln, California, USA;

    c.  February 16, 2014, Snoqualmie, Washington, USA;

    d.  March 29, 2014, Miami, Florida, USA;

    e.  May 3, 2014, Pala, California, USA;

    f.  June 27, 2014, Amsterdam, Netherlands;

    g.  June 30, Vienne, France;

    h.  July 5, 2014, Barrie, Ontario, Canada; and

    i.  August 2, 2014, Bossier City, Louisiana, USA.

33.     Further, The Commodores are currently scheduled to perform numerous additional live performances in 2014 in the United States and overseas.

34.     In 2001, the Commodores Entertainment registered four trademarks with the United States Patent and Trademark Office (collectively referred to as the "COMMODORE Marks"):

    a.     <u>Reg. No. 2,424,689</u> (January 30, 2001): Class 41 Trademark for "THE COMMODORES," granting COMMODORE ENTERTAINMENT exclusive rights to the mark for entertainment, namely live performances by a musical and vocal group.

6

b. Reg. No. 2,424,686 (January 30, 2001): Class 41 Trademark for a stylized version of the word "COMMODORES," granting COMMODORE ENTERTAINMENT exclusive rights to the mark for entertainment, namely live performances by a musical and vocal group.

c. Reg. No. 2,497,958 (October 16, 2001): Class 9 Trademark for "THE COMMODORES," granting COMMODORE ENTERTAINMENT exclusive rights to the mark for musical sound and video recordings, namely, pre-recorded audio cassettes, video tapes, compact discs of live and in-studio musical performances.

d. Reg. No. 2,490,360 (September 18, 2001): Class 9 Trademark for a stylized version of the word "COMMODORES," granting COMMODORE ENTERTAINMENT exclusive rights to the mark for musical sound and video recordings, namely, pre-recorded audio cassettes, video tapes, compact discs of live and in-studio musical performances.

35. In March 2010, Commodores Entertainment successfully renewed all four of the COMMODORE Marks, and those marks are still active and in use today.

36. The COMMODORE Marks are famous marks within the meaning of 15 U.S.C. § 1125(c).

37. Further, the registrations for the COMMODORE Marks are valid and incontestable pursuant to 15 U.S.C. §§ 1065 and 1115(b).

38. Commodores Entertainment has invested substantial time, money and effort in developing the goodwill associated with the COMMODORE Marks.

39. Among other things, Commodores Entertainment has engaged in extensive marketing, promotions and other media to maintain the group's visibility.

7

40.    Notably, Defendants are not authorized to use the COMMODORE Marks in connection with their activities related to musical sound and video recordings or musical performances.

41.    Defendants have never asked for, nor obtained, permission from Commodores Entertainment to use the COMMODORE Marks in connection with their musical endeavors or performances.

42.    The COMMODORE Marks are inherently distinctive trademarks, and as such, they have acquired special significance as the name of a distinct musical group that has been actively recording and performing music since 1968.

43.    Defendants' improper use of the COMMODORE Marks gives the false impression to consumers that Defendants are either endorsed by or affiliated with The Commodores, or have reconstituted the band with founding members in a manner that is likely to cause confusion among reasonable consumers.

**Defendants' Infringing Activities**

44.    On June 5, 2014, Plaintiff Commodores Entertainment learned that Defendants were improperly using the COMMODORE Marks when a current member of The Commodores was asked if they were performing at the West Hampton Beach Performing Arts Center New York (the "WHBPAC").

45.    In investigating the matter, it was discovered that WBHPAC was advertising and promoting a performance by "THE COMMODORES featuring Thomas McClary" and that stated a live concert was scheduled to take place on July 6, 2014.

8

46.     Tickets to attend the concert at the WHBPAC for "THE COMMODORES featuring Thomas McClary" ranged in price from $95.00 to $150.00.

47.     The Commodores were not scheduled to perform in New York at the WBHPAC, nor had they given Defendants the authority or right to advertise or perform live or otherwise using the COMMODORE Marks.

48.     It is clear that the WHBPAC website and other promotional materials were misleading the public into believing that Grammy award winning Commodores would be performing at WHBPAC by advertising a concert for "The Commodores Featuring Thomas McClary."

49.     See attached **Composite Exhibit D** for WHBPAC promotional materials.

50.     The marquee outside of WHBPAC stated, "Commodores, Sunday, 8 PM." See **Exhibit E**, affidavit of Andrew Kimble.

51.     On June 5, 2014, the same day that Commodores Entertainment learned about the proposed July 6, 2014 performance, the band's manager David Fish contacted WHBPAC and spoke with Executive Director James Burke.

52.     In this call, Burke claimed that he was under the impression that he had booked the Grammy award winning Commodores, not a tribute or cover band featuring former member of The Commodores, Thomas McClary.

53.     Commodores Entertainment did not receive any further communication from Defendants or their agents on this matter until June 10, 2014, when Commodores Entertainment received a "cease and desist" letter from McClary's wife, Beryl Thompson-McClary ("BTM") addressing the matter on behalf of Defendants.

54.     A true and correct copy of the June 10, 2014, letter is attached hereto as **Exhibit F.**

55.     BTM claimed that Defendants' improper use of the COMMODORE Marks was not infringement, but constituted "fair use," and further that Defendants were prepared to sue Commodores Entertainment if they did not stop contacting WHBPAC about the scheduled performance.

56.     Commodores Entertainment instructed WHBPAC to "cease and desist" any use of or reference to The Commodores as they were misleading the public and damaging The Commodores' intellectual property rights, reputation and brand.

57.     Despite actual knowledge of the cease and desist letter and the infringement of the COMMODORE Marks, Defendants and WHBPAC proceeded with the concert as scheduled trading on The Commodores' good name, reputation and the Commodore Marks.

58.     None of the performers performing at the WHBPAC on July 6, 2014, were current members of The Commodores. See **Exhibit E.**

59.     On July 6, 2014, the "Commodores featuring Thomas McClary" played many of the hits identified with The Commodores, including opening their performance with "Lady You Bring Me Up," and performing "Night Shift," "Easy," "Crazy," "Three Times a Lady," "Brickhouse," "Sweet Love," "Sail On," "Dancing on the Ceiling," and "Too Hot To Trot." See **Exhibit E.**

60.     Throughout the live performance on July 6, 2014, at WHBPAC, neither McClary nor anyone else acknowledged that the performers on stage were not the actual

members of the Commodores, but instead a group of performers performing Commodores songs and a former member of the Commodores. See **Exhibit E**.

61.    At the July 6, 2014, live performance, McClary referred to the group identified as the "The Commodores featuring Thomas McClary" as "The Commodores" whenever he spoke to the crowd. See **Exhibit E.**

62.    At no point during the live concert on July 6, 2014, did McClary refer to himself as a former member or as a founding member of The Commodores. See **Exhibit E.**

63.    In addition to the live performance on July 6, 2014, Defendants are improperly marketing the band using the COMMODORE Marks at the domain name http://thomasmcclary.com/ and on Facebook, https://www.facebook.com/thomas.mcclary.50#!/CommodoresfeaturingThomasMcClary. True and correct copies of relevant portions of the website and Facebook accounts referenced above are attached hereto as **Composite Exhibit G.**

64.    Defendants' inappropriate and prominent use of "The Commodores" in connection with live musical performances by a group calling itself "The Commodores featuring Thomas McClary" or "The 2014 Commodores" is likely to confuse, and has confused, the public to such an extent that the public will believe Defendants and Commodores Entertainment are related parties when, in fact, they are not.

65.    In fact, David Fish, the Commodores' manager since 1990 has received calls and emails after July 6, 2014, from persons and entities that were misled and confused about McClary's affiliation and/or relationship with The Commodores and if

11

The Commodores had let McClary back into the group.  See **Exhibit H.**

66.    As a result of Defendants' infringement and inappropriate actions, Commodores Entertainment has retained the undersigned counsel.

67.    All conditions precedent to the institution and maintenance of this action have occurred or have been satisfied.

## COUNT I
## Federal Trademark Infringement, 15 U.S.C. §§ 1114

68.    Commodores Entertainment reincorporates by reference paragraphs 1 through 67 of this complaint as though fully set forth herein.

69.    Commodores Entertainment has a trademark which is inherently distinctive and/or has established secondary meaning as evidenced by the United States Patent and Trademark Office Registration No. 2,497,958.

70.    Defendants have engaged in the acts set forth above to cause confusion and to deceive and defraud both the public and consumers of Commodores Entertainment's services.

71.    As set forth above, Defendants have, without Commodores Entertainment's consent, used in commerce a reproduction, counterfeit, copy or colorable imitation of the COMMODORE Marks in connection with live musical performances.

72.    The unauthorized use of the COMMODORE Marks is likely to cause, and has caused, confusion and mistake, and is likely to deceive, and has deceived, the consuming public as to the affiliation, connection, or association of Defendant, McClary, with The Commodores that he does not have.

12

73.     Defendants' actions constitute violations of Section 32(1)(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a).

74.     Defendants' conduct has and will continue to cause confusion to, mistake by, and deception of customers as to the source of Defendants' services and/or its relationship with Commodores Entertainment.

75.     As a direct and proximate result of Defendants' deliberate and intentional infringement, Commodores Entertainment has suffered and continues to suffer irreparable harm for which it has no adequate remedy at law.

76.     Defendants' conduct has and will continue to cause irreparable harm to Commodores Entertainment unless restrained, restricted and enjoined by this Court.

77.     Defendants' deliberate and intentional infringement makes this an exceptional case under 15 U.S.C. § 1117(a) and allows for the award of Defendants' profits, treble damages, and the costs of the action including its reasonable attorneys' fees and costs.

## COUNT II
### Federal Trademark Infringement, 15 U.S.C. § 1125(a)

78.     Commodores Entertainment incorporates by reference paragraphs 1 through 67 of this complaint as though more fully set forth herein.

79.     Defendants' actions in using the COMMODORE Marks in connection with live musical performances constitute a false designation of origin, sponsorship, or approval in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

13

80.     Defendants have improperly promoted their musical act on their website, http://thomasmcclary.com, and Facebook as "The Commodores featuring Thomas McClary" and to potential customers of Commodores Entertainment and, in doing so, has misrepresented the nature of its musical performances to be those of Commodores Entertainment and The Commodores.

81.     Defendants have and continue to engage in the aforementioned acts with the intent to deceive and defraud the public and consumers of Commodores Entertainment's services and live music performances to pass and palm off Defendants' live concerts and musical performances as those of The Commodores and Commodores Entertainment.  Defendants' improper and infringing acts have created and are likely to continue to create confusion in the minds of reasonable consumers as to the affiliation and sponsorship of their activities by The Commodores.

82.     Defendants' misrepresentations to customers and potential customers by the use of marketing and promotion of the infringing name on its website and Facebook constitute a false designation of the origin of the services entering commerce on behalf of Defendants and are false descriptions and representations of these services and musical performances.

83.     These misrepresentations have and will continue to cause confusion to, mistake by, and deception in the minds of reasonable consumers as to the source of origin of the music and performances being sold by Defendants and their agents and as to the existence of an affiliation between Defendants and Commodores Entertainment and The Commodores, causing irreparable injury to Commodores Entertainment.

14

84.    Defendants' conduct has and will continue to cause irreparable harm to Commodores Entertainment unless restrained by this Court.

85.    Defendants' conduct constitutes a violation of 15 U.S.C. § 1125(a).

86.    Defendants' infringement has been and continues to be willful and in bad faith because of the continued infringing activities despite actual knowledge of Commodores Entertainment's rights and demands to stop using the COMMODORE Marks.

87.    As the direct and proximate result of Defendants' deliberate and intentional infringement, Defendants have unlawfully profited and Commodores Entertainment and The Commodores have suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

## COUNT III
### Federal Trademark Dilution – 15 U.S.C. 1125(c)

88.    Commodores Entertainment incorporates by reference paragraphs 1 through 67 of this complaint as though more fully set forth herein.

89.    Plaintiff is the owner of the service mark The Commodores, which is both famous and distinctive throughout the United States and the world through use in the advertising and marketing of Plaintiff's music and live performances, through airplay, record sales, newspaper and magazine articles concerning the group, and through numerous public appearances and events.

90.    Defendants herein are making commercial use of Plaintiff's mark in commerce for their monetary gain.

91.     The COMMODORE Marks are famous, within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

92.     Defendants began the misuse of the COMMODORE Marks long after the COMMODORE Marks became famous.

93.     Plaintiff's marks are associated with the Grammy award winning group The Commodores exclusively in connection with live and recorded music and musical performances, and have been so associated for over well over a decade.

94.     Defendants' use of the COMMODORE Marks for musical performances presents a likelihood of dilution of the distinctive value of Plaintiff's famous mark, The Commodores, and its business reputation as a recognized and award winning musical band associated with said mark, in violation of 15 U.S.C. § 1125(c).

95.     Plaintiff did not and does not authorize any of the Defendants, or any of Defendants' agents, to use the COMMODORE Marks in any manner whatsoever.

96.     As a direct result of Defendants' willful acts of service mark dilution of The COMMODORE Marks as described herein, Plaintiff has suffered substantial damage, in an amount to be proven at trial.

97.     Defendants' acts of dilution have also caused Plaintiff irreparable, ongoing injury of a nature that may not be compensable by monetary damages alone, and Commodores Entertainment is therefore entitled to injunctive relief.

98.     Furthermore, by engaging willingly in the wrongful conduct described herein, Defendants have acted maliciously, fraudulently, oppressively, and in conscious disregard of Plaintiff's intellectual property rights.

16

99.    Defendants' wrongful conduct, as set forth herein, constitutes a violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

100.    Defendants' use of the COMMODORE Marks for music and live musical performances as used to date are not in any way legally defensible as a nominative fair use of the COMMODORE Marks.

### COUNT IV
#### Passing Off – Section 43(a) of Lanham Act

101.    Commodores Entertainment incorporates by reference paragraphs 1 through 67 of this complaint as though more fully set forth herein.

102.    By distributing, marketing and otherwise exploiting itself as "The Commodores featuring Thomas McClary" or the "2014 Commodores" in interstate commerce Defendants are passing off their goods and services to the public as if they were the Grammy award winning group, The Commodores.

103.    As a result, members of the public will and have been reasonably deceived and/or confused into believing that by going to a concert held by The Commodores Featuring Thomas McClary they are actually going to see The Commodores or that the performance was in some way endorsed by The Commodores.

104.    Plaintiff is seriously injured by such deception, in that it negatively impacts Plaintiff's ability to distribute, market and otherwise exploit its products and musical performances and subjected them to consumer confusion insofar as Defendants' are not members of The Commodores or otherwise endorsed by the band.

105.    By engaging in the wrongful conduct described herein and above, Defendants have violated the passing off restrictions of section 43(a) of the Lanham Act.

106.    Because Defendants have engaged in the conduct described herein with actual knowledge of the harm being caused to Plaintiff by such wrongful conduct and acts, this is an exceptional case, which merits an award of treble damages and attorneys' fees against Defendants.

107.    Defendants' acts and conduct have caused and will continue to cause Plaintiff great and irreparable injury that cannot be adequately compensated or measured in damages. Plaintiff has no adequate remedy at law and will suffer immediate and irreparable loss, damage and injury unless Defendants are restrained and enjoined from continuing to engage in such wrongful conduct.

<u>**COUNT V**</u>
**False Advertising – Section 43(a) of Lanham Act**

108.    Commodores Entertainment incorporates by reference paragraphs 1 through 67 of this complaint as though more fully set forth herein.

109.    Defendants' unauthorized direct and indirect use of the COMMODORE Marks, as well as the trade name The Commodores, as described above, in conjunction with the commercial advertising and promotion of music and live musical performances, constitutes unfair competition and false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

110.    Defendants' direct and indirect false statements and misrepresentations concerning their affiliation with the Grammy award winning group, The Commodores,

are material in that the representations are likely to influence, and have influenced, the purchasing decisions of consumers.

111.   Defendants' misrepresentations violated, and continue to violate the Lanham Act in that the misrepresentations have actually deceived, or have the tendency to deceive, a substantial segment of the public that Defendants are targeting with their false and misleading advertising, marketing and promotional materials.

112.   Alternatively, because the Defendants' statements are literally false, there is a presumption under the Lanham Act that the statements actually misled, and continue to mislead, consumers.

113.   Defendants violated the Lanham Act by placing in interstate commerce, or contributing to or acquiescing in their placement, the false and/or misleading statements that The Commodores were performing throughout the various advertising and promotional materials identified in the foregoing paragraphs.

114.   Defendants' actions herein have been willful, wanton, reckless, undertaken in bad faith, and with the intent to deceive and misrepresent the true nature of the Defendants' concert appearances as being those of the Grammy award winning Group, The Commodores, to the detriment of Plaintiff.

115.   As a direct and proximate result of Defendants' false and misleading advertising and promotions, Plaintiff has suffered, is suffering, and will continue to suffer damages.

## COUNT VI
### Damages Pursuant to 15 U.S.C. § 1117

116. Commodores Entertainment incorporates by reference paragraphs 1 through 67 of this complaint as though more fully set forth herein.

117. Defendants' deliberate and deceptive use of the COMMODORE Marks were done with knowledge and intent to cause confusion, mistake, and deception.

118. As a result, Commodores Entertainment has been damaged in its business, and Defendants have wrongfully profited therefrom.

119. Accordingly, Commodores Entertainment is entitled to money damages pursuant to 15 U.S.C. § 1117(a), (b).

## COUNT VII
### Common Law Trademark Infringement and Unfair Competition

120. Commodores Entertainment incorporates by reference paragraphs 1 through 67 of this complaint as though more fully set forth herein.

121. Since Commodores Entertainment's initial use of the COMMODORE Marks in approximately 1978, it has sold services and has advertised and promoted its trademark continuously and extensively in commerce.

122. As a result of such use, promotion, and advertisement, the trademark is well known and recognized in the United States as being associated with the Grammy award winning musical group. Specifically, the trademarks are identified in consumers' minds with Commodores Entertainment's music group and musical performances and, as such, has acquired a secondary meaning.

123. Commodores Entertainment has reason to consider the COMMODORE Marks and the goodwill associated with them as valuable assets.

124. By adopting and using the COMMODORE Marks in conjunction with musical recording and live musical performances substantially similar to, and including material and songs performed by The Commodores coupled with making false representations of origin, Defendants have infringed upon Commodores Entertainment's common law marks and unfairly competed with Commodores Entertainment.

125. Defendants' use of the COMMODORE Marks and/or substantially similar trademark(s) have resulted and will continue to result in a likelihood of confusion by the public.

126. Defendants do not have Commodores Entertainment's permission or authorization to make use of the COMMODORE Marks.

127. By reason of Defendants' conduct, they have infringed and threaten to further infringe upon the COMMODORE Marks.

128. The continued use by Defendants of the COMMODORE Marks is likely to confuse, mislead, and deceive the public into believing that Defendants' musical performances are in some manner originated by, offered by, sponsored by, sanctioned by, or otherwise associated with Commodores Entertainment and The Commodores, all to the damage and injury of Commodores Entertainment.

129. Defendants' unlawful conduct will damage and continue to damage Commodores Entertainment unless it is enjoined by this Court.

130. Commodores Entertainment has no adequate remedy at law.

21

**COUNT VIII**
**VIOLATION OF FLORIDA'S DECEPTIVE**
**AND UNFAIR TRADE PRACTICES ACT**
**FLA. STAT. §501.201 *et seq.***

131.   Commodores Entertainment incorporates by reference paragraphs 1 through 67 of this complaint as though more fully set forth herein.

132.   Defendants are using the COMMODORE Marks in connection with the exact same type of live musical performances and recordings and same consumers as those offered by The Commodores under the COMMODORE Marks.

133.   Defendants are intentionally palming or passing off their band as someone associated or affiliated with The Commodores, by means of their improper use of the COMMODORE Marks.

134.   By virtue of the acts described above, Defendants have engaged in unfair methods of competition, unconscionable acts or practices, and unfair and deceptive acts or practices in the conduct of trade or commerce.

135.   Defendants' actions have caused and unless enjoined by this Court, will continue to cause, irreparable damage, loss and injury to Commodores Entertainment for which it has no adequate remedy at law.

136.   Absent the entry of an injunction by this Court, Defendants will continue to use "The Commodores" prominently in connection with their live music performances and recordings and will continue to cause Plaintiff irreparable harm in the form of lost business, damage to reputation, and loss of goodwill.

## PRAYER FOR RELIEF

WHEREFORE, Commodores Entertainment requests that the Court enter judgment in its favor and to grant the following relief:

1.      That Defendants' aforementioned acts be declared to be an infringement of Commodores Entertainment's registered trademarks in violation of the trademark laws of the United States, Title 15, United States Code, Section 1114 and 1125(a) and that Defendants, their respective shareholders, directors, officers, agents, servants, employees, assigns, privies, affiliated companies and all persons in active concert or participation with them, and all those controlled by them, be preliminarily and permanently enjoined as follows:

a.      From using the band name "The Commodores featuring Thomas McClary" "The 2014 Commodores" or any other band name that begins with "The Commodores" or any variation thereof in any   manner whatsoever including on the website http://thomasmcclary.com, Facebook, and any other media, print, or social media;

b.      Requiring Defendants, with respect to the conduct of their business and musical performances and media and publicity related thereto:

i.      To cease doing business using the name "The Commodores featuring Thomas McClary," "The 2014 Commodores" or any other band name that begins with "The Commodores" or any variation thereof in any manner whatsoever;

ii.      To disable and/or deliver to the Court for impounding during the pendency of this action, all advertisements, catalogues,

23

brochures, or other printed material in their possession, custody, or control which display "The Commodores featuring Thomas McClary" or "The 2014 Commodores" or web URL address http://thomasmcclary.com/ or its Facebook account that prominently includes the name "The Commodores," other than to state in fair use that McClary was a former member or founding member of such group;

iii.    To cancel and withdraw all advertisements, tweets, blogs or other marketing and publicity related activities generated by Defendants containing the "The Commodores featuring Thomas McClary" or the "2014 Commodores" whether on the web URL address http://thomasmcclary.com/, its Facebook page, Twitter other social media or otherwise other than to state McClary was a former member or founding member of such group; and

iv.    To perform other and such further acts as may be reasonably necessary to eliminate any confusion in the minds of the consuming public as to the nonexistence of any relationship between Commodores Entertainment, The Commodores and Defendants;

2.    That Defendants' aforementioned acts be adjudged to be unfair methods of competition, passing off and trademark dilution and that, by virtue thereof, Commodores Entertainment be awarded the preliminary and permanent injunctive relief set forth in paragraph 1 above;

24

3.    Pursuant to Title 15 United States Code, Section 1117, that Defendants be ordered to:

a.    Account for and pay over to Commodores Entertainment all gains, profits, and advantages derived by it by said trademark infringement, false designations of origin, passing off, false description or representation of its services, false advertising, and from its said unfair competition and deception and unfair trade practices; and

b.    Pay Commodores Entertainment damages arising from the above-described acts in a just amount to be determined at the trial of this action and in accordance with Title 15, United States Code, Section 1117(a), together with costs, disbursements, and reasonable attorneys' fees;

4.    That this court adjudge that Defendants' use of the band name "The Commodores Featuring Thomas McClary" or the "2014 Commodores" for live performances or musical recordings is not a fair use of the COMMODORE Marks by Defendants;

5.    That the aforesaid acts of Defendants be adjudged to be unfair competition under the common law of the State of Florida and that Commodores Entertainment be granted injunctive relief and awarded damages as determined at trial;

6.    That this Court find that Defendants have violated the Florida Unfair and Deceptive Trade Practices Act and will continue to use unfair and deceptive trade practices unless enjoined from doing so;

7.    That Commodores Entertainment be awarded damages in the amount that Defendants, by their wrongful conduct, have unjustly enriched themselves;

8.    That Commodores Entertainment be awarded punitive damages in an amount to be determined at trial, by reason of Defendants' willful, wanton, and intentionally deceptive conduct and infringing activities as set forth above;

9.    That Commodores Entertainment be awarded its costs and attorneys' fees; and,

10.    That Commodores Entertainment be awarded such other and further relief as this Court may deem just, proper, and equitable.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this _18th_ day of _August_, 2014.

Respectfully Submitted,

_____

DEAN A. KENT
Florida Bar No. 0307040
dkent@trenam.com/pholliday@trenam.com
STEPHANIE LEUTHASUER
Florida Bar No. 44981
sleuthauser@trenam.com/jamer@trenam.com
TRENAM KEMKER
101 East Kennedy Boulevard, Suite 2700
Tampa, Florida  33602
Tel:  813-223-7474
Fax: 813-229-6553
Attorneys for Plaintiff, Commodores Entertainment
Corporation