**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

COMMODORES ENTERTAINMENT
CORPORATION,

    Plaintiff,

v.                                         Case No. 6:14-cv-1335-Orl-37GJK

THOMAS MCCLARY; and FIFTH
AVENUE ENTERTAINMENT, LLC,

    Defendants.

**ORDER**

This cause is before the Court on the following:

1. Plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction and Memorandum of Law in Support (Doc. 2), filed August 19, 2014;

2. Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction and Date for Filing Opposition (Doc. 33), filed September 12, 2014; and

3. Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction and Memorandum of Law in Support (Doc. 37), filed September 17, 2014.

Upon consideration, the Court finds that the Plaintiff's Motion (Doc. 2) is due to be granted.[1]

**BACKGROUND**

Defendant Thomas McClary was one of the seven founding members of the band

---

[1] The factual findings and conclusions of law in this Order are not controlling for any later purposes, including a permanent injunction or trial. *E. Remy Martin & Co. v. Shaw-Ross Int'l Imps.*, 756 F.2d 1525, 1528 n.1 (11th Cir. 1985).

The Commodores. (Doc. 1, ¶ 3.) The Commodores gained recognition throughout the 1970s with famous hits such as "Brick House" and "Three Times a Lady," and in 1978 the original members entered into a General Partnership Agreement and formed a corporation ("Commodores Entertainment Corp."). (*Id.* ¶¶ 13–14, 15, 17.) Defendant left the band in 1984 and began a solo career. (*Id.* ¶ 21.) Despite a change in the membership composition, The Commodores went on to win a Grammy in 1986 for their single "Nightshift" and they have performed in the United States and internationally for the past twenty years, and they continue to do so. (*Id.* ¶¶ 28, 30, 33.) In 2001, Plaintiff registered four trademarks with the United States Patent and Trademark Office ("USPTO") to use the terms "Commodore" and "Commodores" in connection with the band (collectively, the "Marks"). (*Id.* ¶ 34.)

Recently, Defendant formed a band called "The Commodores Featuring Thomas McClary," which he also refers to as "The 2014 Commodores." (*Id.* ¶ 48; Doc. 2, p. 1.) Defendant has performed with his new band, playing several of the hits identified with The Commodores without acknowledging that his band members were not members of The Commodores, and he has used the Marks allegedly owned by Plaintiff to market his own band. (*Id.* ¶¶ 59–60, 63.) Plaintiff was unaware of Defendant's new band until someone asked a current member of The Commodores about Defendant's performance at the West Hampton Beach under the assumption that it was a performance by The Commodores. (*Id.* ¶ 44.)

Plaintiff brought this trademark infringement action (*See* Doc. 1) and Motion for Preliminary Injunction (*See* Doc. 2) claiming that Defendant has used Marks purportedly owned by Plaintiff and contending that Defendant's use of the "Commodores" name is a

2

"thinly disguised ploy designed to improperly infringe" on Plaintiff's Marks. (Doc. 1, ¶ 1; Doc. 2, p. 4.) Defendant opposed the Motion (*See* Doc. 33),[2] and Plaintiff replied (*see* Doc. 37). The parties appeared before the Court for oral argument on Plaintiff's Motion for Preliminary Injunction on September 23, 2014. (*See* Doc. 41.) The matter is now ripe for the Court's adjudication.

**STANDARD**

Federal Rule of Civil Procedure 65 authorizes the Court to enter a preliminary injunction. To prevail on its request for injunctive relief, Plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to Plaintiff outweighs the harm that an injunction may cause Defendant; and (4) that granting the injunction would not disserve the public interest. *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). A preliminary injunction is "an extraordinary and drastic remedy" that should only be granted if the movant clearly establishes all four elements. *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). However, the

---

[2] Defendant also opposes the motion on the ground that Plaintiff is not a valid, existing corporation, and Plaintiff is not the owner of the Marks registered with the USPTO. (Doc. 33, p. 2.). Defendant's argument that Plaintiff's use of "Commodores Entertainment Corporation" rather than "Commodores Entertainment Corp." is premised on an incorrect interpretation of certain Nevada corporation laws. Abbreviations change the name for certain words such as "services" (versus "svc.") or "American" (versus "Amer."). NAC 78.090. However, "corporation" versus "corp." "shall not be considered when determining whether two names are distinguishable." NAC 78.020. Additionally, a phonetic similarity may make a name distinguishable if it actually changes the word in some manner ("capital" versus "capitol" or "picks" versus "pix"). NAC 78.050. However, the laws say nothing about the difference between a singular and plural version of a word in a name. Finally, under Federal Rule of Civil Procedure 17(b)(3)(A), an unincorporated association may sue in its name to enforce a substantive right existing under the United States laws; thus, even if the Plaintiff had been unincorporated, it may sue to enforce those common law rights it has acquired.

Court does not have to find that "evidence positively guarantees a final verdict in plaintiff's favor." *Levis Strauss*, 51 F.3d at 985.

## DISCUSSION

For the reasons set forth below, the Court concludes that Plaintiff has carried its burden and met the four requirements necessary for granting injunctive relief.

### I. Substantial Likelihood of Success on the Merits

First, the Court finds that Plaintiff has demonstrated a substantial likelihood of success on its trademark infringement claim.[3] To succeed on a trademark infringement claim, Plaintiff must prove: (1) that it has priority and enforceable trademark rights in the mark; and (2) that Defendant "made unauthorized use of it such that consumers were likely to confuse the two." *Custom Mfg. & Eng'g, Inc. v. Midway Serv., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

### A. Priority and Ownership Over the Mark

"Under common law, trademark rights are appropriated only through actual [and continuous] prior use in commerce." *Tally-Ho, Inc. v. Coast Cmt. Coll. Dist.*, 889 F.2d 1018, 1022 (11th Cir. 1989). Courts have applied a two-prong test for determining whether a party has established "prior use" sufficient to establish ownership: "[E]vidence showing, first, adoption, and second, use in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1195 (11th Cir. 2001). The Court should inquire into the activities surrounding the alleged

---

[3] The Court makes no findings with regards to the likelihood of success of Plaintiff's other claims.

prior use of the mark to determine whether the second prong is satisfied. *See id.*; *see, e.g.*, *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011) (concluding that a company proved prior use of a mark sufficient to establish ownership when the distribution of the mark was widespread, members of the targeted public actually associated the mark with the product, the mark identified the source of the product, and other potential users of the mark had notice that the mark was in use in connection with the product).

When courts are faced with a "case of joint endeavors" situation—that is, when prior ownership by one of several claimants to a mark cannot be established—they tend to award "trademark rights to the claimant who controls the nature and quality of the services performed under the mark." *Crystal Entm't*, 643 F.3d at 1322 (citing *Robi v. Reed*, 173 F.3d 736, 740 (9th Cir. 1999). In the context of a band, this is typically the band members who made the band famous. *Id.*; *see also Bell v. Streetwise Records, Ltd.*, 640 F.Supp. 575, 582 (D. Mass. 1986) (noting that the "norm in the music industry is that an artist or group generally owns its name" and concluding that the band members, with their "distinctive personalities and style as performers," controlled the nature and quality and thus owned the band name mark).

When members of a band dispute ownership of a mark associated with the band, courts have found that members who remain active and associated with the band have better title to the mark than those who do not. *See Robi*, 173 F.3d at 740. The *Robi* court held that a founding member who remained and continuously performed with the band had better rights to the mark and could use the mark "to the exclusion" of the founding member who had left the band. *Id.* ("[W]hen Robi left the group, he took no rights to the

service mark with him. Rather, the mark remained with the original group.").

In accordance with the decisions of courts in other cases of joint endeavors, the original band members of The Commodores—including Defendant—acquired common law ownership and trademark rights because it was their style and sound that brought recognition to the band name and Marks.[4] *Crystal Entm't*, 643 F.3d at 1322. However, Defendant no longer has a valid claim to ownership over the Marks. *See Robi*, 173 F.3d at 740. Rather, the band members who remained after Defendant left in 1984 have prevailing ownership because they "maintained continuity with the group and [have] been in a position to control the quality of services" of the Marks associated with the band name. *See id.* Defendant has not put forward any evidence to suggest that he maintained quality or control over the Marks associated with The Commodores after he left; rather, it was the other original band members who stayed with the group that continued to control the nature and quality of the Marks, went on to win a Grammy, and further expanded the band's fan base and recognition.[5] (*See* Doc. 1, ¶¶ 28-33.)

---

[4] A common law trademark is not trumped by a federal trademark registration. *See Crystal Entm't*, 643 F.3d at 1319 (explaining that the use of one's common law trademark can constitute a violation of section 43(a) of the Lanham Act).

[5] In light of the *Robi* decision that the U.S. Court of Appeals for the Eleventh Circuit has relied on, the Court finds the parties' dispute over Defendant's abandonment of his trademark ownership to be moot. Regardless, Defendant's argument on this matter unpersuasive. Under the Lanham Act, a trademark is abandoned when:

> [I]ts use has been discontinued with intent not to resume such use. Intent not to resume may be inferred from circumstances. Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark.

15 U.S.C. § 1127. "Use" is "the bona fide use of such a mark made in the ordinary course of trade, and *not made merely to reserve a right in a mark*." 15 U.S.C. § 1127 (emphasis

6

## B. Consumer Confusion

To determine whether there is a likelihood of consumer confusion, the Court considers a seven-factor balancing test: (1) the type of mark; (2) the similarity of the marks; (3) the similarity of the goods the mark represents; (4) the similarity of the parties' retail outlets, trade channels, and customers; (5) the similarity of advertising media; (6) defendant's intent; and (7) actual confusion. *Custom Mfg. & Eng'g*, 508 F.3d at 648.

The Court agrees with Plaintiff that "there is a likelihood that consumers would confuse the Grammy award winning band, 'the Commodores,' with the 'The Commodores featuring Thomas McClary' and/or 'The 2014 Commodores.'" (Doc. 2, p. 6.) Confusion is likely because: (1) Defendant's band "subsumes [Plaintiff's] mark within its title and doesn't seek to alter or change the spelling" and it has "no disclaimers or limiting language," (*id.* at 7); (2) the bands would perform similar live music (*see* Doc. 1, ¶ 59) and advertise using the same or a similar name and mediums (*see id.* ¶¶ 50, 63); and (3) the bands appeal to the same fan base and venues (*see id.* ¶¶ 44, 52, 65). Additionally, actual confusion is satisfied given the fact that fans and executive directors of venues

---

added). Defendant, relying on the Ninth Circuit decision in *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 804 (9th Cir. 1970), contends that "[e]ven a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith." (Doc. 33, p. 16.) He points to cases from the Third and Ninth Circuits that suggest royalties are a genuine usage of a mark to satisfy the "use" requirement. *See Marshak v. Treadwell*, 240 F.3d 184, 199 (3d Cir. 2001); *Herb v. Reed Enter., LLC v. Fl. Entm't Mgmt., Inc.*, 736 F.3d 1239 (9th Cir. 2013). However, the Eleventh Circuit has not adopted those courts' positions. *See Crystal Entm't*, 643 F.3d at 1323 (explaining that collecting royalties from the sale of records was not enough to give ownership rights over the marks); *see also Cumulus Media, Inc. v. Clear Channel Commc'n, Inc.*, 304 F.3d 1167, 1174 (11th Cir. 2002) (requiring more than "mere token use" to overcome abandonment, such as keeping up your association with the mark by using it on business cards or on a sign at your broadcasting studio). Therefore, even if the abandonment issue were not moot, the Court would find that Plaintiff is likely to prevail on the abandonment issue.

have confused Defendant's band with The Commodores. (*See id.*, ¶¶ 44, 52.) Accordingly, the Court finds a substantial likelihood that Plaintiff will establish the consumer confusion element of its claim.

### C. Irreparable Injury

Once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim, there is a presumption of irreparable harm. [6] *Tally-Ho*, 889 F.2d at 1029 (citing *Processed Plastic Co. v. Warner Commc'n*, 675 F.2d 852, 858 (7th Cir. 1982) ("[I]nfringement by its nature causes irreparable harm.")). As Plaintiff has demonstrated a substantial likelihood of success on the merits of its trademark infringement claim, irreparable injury is presumed.

Further, this Circuit has repeatedly held that "a sufficiently strong showing of a likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of . . . [a] substantial threat of irreparable harm." *McDonalds Corp. v. Robertson*, 147 F.3d 1301, 1310 (11th Cir. 1998) (citing *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir. 1985); *see also Ferrellgas Partners, LP v. Barrow*,

---

[6] The Defendant asserts that the Supreme Court in *eBay Inc v. MercExchange, LLC* defeated the presumption of irreparable harm. 547 U.S. 388 (2006); (Doc. 33, p. 19.) However, the Court there simply rejected a categorical grant or denial to injunctive relief, explaining that (1) it has "consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed" and (2) it also does not believe that there should be a categorical denial of injunctions to patent holders who do not use their patents in a commercial manner because their nonuse does not mean they will not suffer irreparable harm. *eBay*, 547 U.S. at 393–94. The Court declined to take a position on whether injunctive relief should even be issued in the case. *Id.* at 394. The Eleventh Circuit has not interpreted *eBay* as "defeating" the presumption of irreparable harm, as incorrectly asserted by Defendant. In fact, it has "declin[ed] to express . . . the effect of *eBay*" in relevant cases and rather only adopts the Court's denial of categorical approaches. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008).

143 F. App'x 180, 191 (11th Cir. 2005) (concluding that irreparable harm was established based on a sufficiently strong showing of likely confusion); *Tally-Ho*, 889 F.2d at 1029 (holding that a substantial likelihood of confusion is a substantial threat of irreparable harm). Plaintiff has demonstrated a sufficient likelihood of consumer confusion, evidenced by the general public mistaking Defendant's band with the Grammy award winning Commodores and the venue's Executive Director thinking he hired the Grammy award winning Commodores when he in fact hired Defendant's band (Doc. 1, ¶¶ 44, 52.) As such, Plaintiff has sufficiently alleged irreparable harm.

**D. Balance of Hardships**

Plaintiff must next prove that the injury it faces outweighs any harm that Defendant may face should the injunction issue. *Levi Strauss*, 51 F.3d at 985. The threatened harm to Plaintiff appears to be more severe than the potential harm of injunctive relief to Defendant. Plaintiff notes, and the point is well-taken, that the Defendant's continued use of the Marks would "create a great risk of the destruction of many years of hard work and effort The Commodores have undertaken in promoting and cultivating their band and the Mark." (Doc. 2, p. 15.) Defendant's assertion that he will not be able to secure live performances if he cannot use the Marks at issue is not persuasive (Doc. 33, p. 20); rather, this further emphasizes the value of the Marks and the harm that Plaintiff would suffer by Defendant's continued use and dilution of the Marks. Defendant could either perform under a different band name without causing any confusion, or, to uphold his notoriety as a Commodore, he could make fair use of the Marks.[7] The Court concludes

---

[7] Even if there is a likelihood of confusion, Defendant could potentially make "fair use" of the Marks purportedly owned by Plaintiff. Under the classic fair use doctrine, Defendant could use the Marks to describe his own mark. *Cairns v. Franklin Mint Co.*,

9

that the dilution of the Marks and the confusion to the general public outweighs any potential loss of business or notoriety that may be suffered by Defendant if injunctive relief is issued. This logically tips the balance of hardships in Plaintiff's favor.

### E. Public Interest

Finally, Plaintiff must prove that granting the injunction would not be adverse to the public interest. "[A]n injunction from infringing behavior serves the public interest in protecting consumers from such behavior*." Nike, Inc. v. Leslie*, 227 U.S.P.Q. 574, 575 (1985). Also, it is in the public interest to avoid inevitable confusion that may result from trademark infringement. *Tally-Ho*, 889 F.2d at 1029; *see also Sundor Brands, Inc. v. Borden, Inc.*, 653 F.Supp. 86, 93 (M.D. Fla. 1986) ("The public interest . . . would be served by the entry of an injunction which would immediately prevent further confusion of customers from occurring."). Accordingly, granting an injunction will serve the public's interest. Therefore, Plaintiff has met its burden of clearly establishing all four elements necessary for a preliminary injunction to issue.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. Plaintiff's Motion for Temporary Restraining Order, which the Court previously denied and converted to a Motion for Preliminary Injunction and

---

292 F.3d 1139, 1150 (9th Cir. 2002). To constitute classic fair use, Defendant's use of the mark could not be as a trademark and it must be "fairly and in good faith" and "only to describe" its goods or services. J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARK AND UNFAIR COMPETITION, 11:45 (4th ed. 2001). Alternatively, under the nominative fair use doctrine, Defendant could use the Marks to describe the owner of them rather than himself, like in comparison advertising. (*See* Doc. 2, p. 8); *New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302 (9th Cir. 1992). Currently, the Court finds that Defendant's use does not constitute "fair use."

10

      Memorandum of Law in Support (Doc. 2) is **GRANTED.**

2. Effective October 20, 2014, Defendant is **RESTRAINED** and **ENJOINED**, pending further determination by this Court, from using any of the Marks at issue in a manner other than fair use, including performing under the name "The Commodores featuring Thomas McClary" or "The 2014 Commodores."

3. Pursuant to Federal Rule of Civil Procedure 65(c), the effectiveness of this preliminary injunction is conditioned upon Plaintiff posting a good and sufficient bond, on or before October 20, 2014, with the sureties acceptable to the Court. The parties shall meet and confer regarding an appropriate bond on or before October 15, 2014, and shall notify the Court once they have done so. If the parties cannot agree on an appropriate bond amount, this Court will determine and set a reasonable bond.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on October 9, 2014.

*[signature]*

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record