# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

COMMODORES ENTERTAINMENT
CORPORATION,

        Plaintiff/Counter
        Defendant,

v.                                      Case No. 6:14-cv-1335-Orl-37GJK

THOMAS McCLARY; and FIFTH
AVENUE ENTERTAINMENT, LLC,

        Defendants/
        Counter Claimants.

_____

THOMAS McCLARY; and FIFTH
AVENUE ENTERTAINMENT, LLC,

        Third Party
        Plaintiffs,

v.

COMMODORES ENTERTAINMENT
CORP.; COMMODORE
ENTERTAINMENT CORP.; DAVID
FISH; WILLIAM KING; WALTER
ORANGE; SAL MICAELS [sic];
PYRAMID ENTERTAINMENT GROUP,
INC.; and DOES 1-100,

        Third Party
        Defendants.

_____

## ORDER

This cause is before the Court on the following:

1.    Third Party Defendant David Fish's Motion to Dismiss Third Party Plaintiffs'

       First Amended Third Party Complaint and Incorporated Memorandum of

Law in Support (Doc. 106), filed November 25, 2014;

2.    Third Party Plaintiffs' Response in Opposition to Third Party Defendant David Fish's Motion to Dismiss (Document 106) and Incorporated Memorandum of Law (Doc. 116), filed December 9, 2014.

Upon consideration, the Court finds that the Motion (Doc. 106) is due to be denied.

## BACKGROUND

On August 19, 2014, Commodores Entertainment Corporation ("CEC") initiated this action against Thomas McClary, a founding member of the band "The Commodores," and Fifth Avenue Entertainment, LLC ("FAE"), alleging, *inter alia*, common law and Lanham Act trademark infringement for use of the trademarked name "The Commodores" (the "Mark"). (Doc. 1.) McClary and FAE ("Third Party Plaintiffs") filed counterclaims against CEC. (*See* Docs. 36, 40, 79.) Additionally, they filed a fifteen-count First Amended Third Party Complaint alleging, *inter alia*, defamation and business disparagement ("Count 10"), interference with present economic activities ("Count 11"), and interference with prospective economic activities ("Count 12"), against the following Third Party Defendants: (1) Commodores Entertainment Corp., a Nevada corporation; (2) Commodore Entertainment Corp.; (3) David Fish; (4) William King; (5) Walter Orange; (6) Sal Michaels; (7) Pyramid Entertainment Group, Inc., a New York corporation ("Pyramid"); and (8) Does 1–100.[1] (*See* Doc. 55.)

David Fish moves to dismiss the First Amended Third Party Complaint, asserting that the Court does not have personal jurisdiction over him. (*See* Docs. 101, 106.) Third

---

[1] Commodores Entertainment Corp. and Commodore Entertainment Corp. have since been terminated as Third Party Defendants pursuant to the Court's March 9, 2015 Order. (*See* Doc. 197.)

Party Plaintiffs oppose. (*See* Docs. 114, 116.) The matter is now ripe for the Court's adjudication.

## STANDARDS

 "The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citation omitted). First, there must be a basis for jurisdiction under the Florida long-arm statute, which confers specific personal jurisdiction[2] over any nonresident who commits a tortious act within the state. *Id.* (citing *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 919 (11th Cir. 1990)); *see* Fla. Stat. § 48.193(1). Second, exercising the specific personal jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Madara*, 916 F.2d at 1514 (citing *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

## DISCUSSION

Fish, the manager of The Commdores, argues that the Court does not have personal jurisdiction over him because he is a resident of Minnesota who "does not regularly conduct business in the State of Florida on behalf of The Commodores" (*see* Doc. 106, p. 2; Doc. 106-1, p. 2). Third Party Plaintiffs counter that the Court has personal jurisdiction over Fish under § 48.193(1)(b) because he committed tortious acts within Florida. (*See* Doc. 116, pp. 8–10; Doc. 55, ¶¶ 168–207.) They rely on the proposition that

---

[2] "[S]pecific personal jurisdiction authorizes jurisdiction over causes of action arising from or related to the defendant's actions within [the forum state,] whereas "[g]eneral personal jurisdiction is based on a defendant's substantial activity in [the forum state] without regard to where the cause of action arose." *Louis Vuitton Malletier v. Mosseri*, 736 F. 3d 1339, 1352 (11th Cir. 2013).

"a non-resident tortfeasor is properly subject to the jurisdiction of the local state when the non-resident engages in intentional conduct calculated to cause injury in the local state." (Doc. 116, p. 8 (citing *Calder v. Jones*, 465 U.S. 783, 789 (1984)).) They further argue that the exercise of jurisdiction would comport with due process.[3] (*See* Doc. 116, pp. 10–12.) The Court will address each prong of the analysis in turn.

## I.      Florida Long-Arm Statute

A defendant's physical presence is not necessary to commit a tortious act in Florida. *Calder*, 465 U.S. at 789. "The commission of a tort for purposes of establishing long-arm jurisdiction does not require physical entry into the state, but merely requires that the place of *injury* be within Florida." *Future Tech. Int'l, Inc. v. Tae II Media, Ltd.*, 944 F. Supp. 1538, 1558 (S.D. Fla. 1996). The Court will address jurisdiction on a claim-by-claim basis. *See KVAR Energy Sav., Inc. v. Tri-State Energy Solutions, LLP*, No. 6:08-cv-85-Orl-19KRS, 2009 WL 103645, at *3 (M.D. Fla. Jan. 15, 2009) (stating that the Court must conduct a specific jurisdiction analysis as to each claim separately).

### A.      Defamation and Business Disparagement

"The reputation of a corporation can be injured by a false publication of defamatory matter, which prejudices its trade or business, or deters a third person from dealing with it." *Astro Tel, Inc. v. Verizon Fla., LLC*, 979 F. Supp. 2d 1284, 1300 (M.D. Fla. 2013) (citation omitted). Third Party Plaintiffs base their defamation and business disparagement claim on Fish's statements to the West Hampton Beach Performing Arts Center ("WHBPAC") and emails to booking agents in the U.S. and Europe declaring that

---

[3] Consistent with the parties' submissions throughout this litigation, the briefing of legal arguments is superficial and decidedly unhelpful. Nonetheless, the Court is able to reach a conclusion on the merits based on an analysis under the proper standards.

McClary does not have the right to use the mark "The Commodores" or the Commodores name. (*See* Doc. 55, ¶¶ 168–176.)

The harm suffered from the tort of business disparagement is felt where the plaintiff resides and conducts business. *See H.E.R.O., Inc. v. Self*, No. 12-60038-Civ, 2012 WL 1802431 at *5, (S.D. Fla. May 17, 2012). Third Party Plaintiffs' business operations are primarily in Florida and McClary resides in Florida. (*See* Doc. 55, ¶¶ 2, 3.) The injurious effects to Third Party Plaintiffs in Florida may reasonably take the form of damage to the reputation of both McClary and FAE, lost customers, and lost revenue. Accordingly, the allegations for this claim are sufficient to support jurisdiction under the Florida long-arm statute.

### B.   Interference with Present and Prospective Economic Activity

"If an individual tortuously interferes with a business relationship outside of Florida that causes injury in Florida, the individual is subject to personal jurisdiction under the Florida long-arm statute." *Elandia Int'l, Inc. v. Ah Koy*, 690 F. Supp. 2d 1317, 1331 (S.D. Fla. 2010). Third Party Plaintiffs base their interference with present economic activities claim on Fish's alleged misrepresentations and threats of legal action to WHBPAC, with whom they had an existing contract. (*See* Doc. 55, ¶¶ 182–188.) They base their interference with prospective economic activity claim on, *inter alia*, Fish's emails to booking agents and talent buyers in the industry which stated that McClary had no right to use The Commodores name and threatened legal action for booking Third Party Plaintiffs. (*See id.* ¶¶ 194–204.)

The effects of tortious interference are felt where plaintiffs reside and conduct business. *H.E.R.O.*, 2012 WL 1802431 at *5. Additionally, injury by interference with

economic activities is deemed to have occurred in Florida when misrepresentations or solicitations to a plaintiff's customers and competitors are received in Florida. *See Future Tech Int'l*, 944 F. Supp. at 1558 (finding that § 48.193(1)(b) was satisfied because plaintiff alleged misrepresentations that constituted interference with business relationships that were received in Florida).

As the Court has previously noted, Third Party Plaintiffs' business operations are primarily in Florida, which is where they will feel the injurious effects of the alleged interference. Moreover, in Count 12, Third Party Plaintiffs allege that they "had a prospective economic relationship to appear at the Tampa Bay Black Heritage Festival event in January, 2015." (Doc. 55, ¶ 197.) However, the booking agent for the event was "no longer interested in presenting 'The Commodores Featuring Thomas McClary' at the festival" after "someone on the [festival] committee received Pyramid's email." (*Id.*) The email, which was allegedly caused by "Third Party Defendants through its agents, including but not limited to, David Fish," stated that Third Party Plaintiffs had no right to use the Commodores name and that "if Pyramid hears of a show announced or advertised for Thomas McClary using the Commodores name, they will have their legal team contact [the venue]" (the "Email"). (*Id.* ¶¶ 195–196.) Third Party Plaintiffs allege that the Email was an intentional misrepresentation and that it "scared off many buyers." Taken as true, *see Iqbal*, 556 U.S. at 678, such allegations are sufficient to satisfy § 48.193(1)(b).

## II.   Due Process

Having found that Florida's long-arm statute confers specific jurisdiction over Fish, the remaining question is whether exercising that jurisdiction comports with Due Process. *Louis Vuitton Malletier v. Mosseri*, 736 F. 3d 1339, 1355 (11th Cir. 2013). The Court finds

that it does.

The Court examines the following factors to determine whether an exercise of jurisdiction comports with Due Process:

> (1) whether the plaintiff's claims "arise out of or relate to" at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant "purposefully availed" himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with "traditional notions of fair play and substantial justice."

*Id.* (citations omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (citation and internal quotation marks omitted).

Regarding the first prong, Third Party Plaintiffs' argue that their three tort claims arise out of and relate to Fish's contacts with the forum—that is, the harm that they suffered in Florida as a result of Fish's tortious conduct. The relatedness inquiry turns on "the direct causal relationship between the defendant, the forum, and the litigation." *Fraser v. Smith*, 594 F.3d 842, 850 (11th Cir. 2010). Fish's actions allegedly caused harm to Third Party Plaintiffs in Florida, which provided the basis for Third Party Plaintiffs' three tortious claims. (*See* Doc. 55, ¶¶ 9, 12, 173–74, 189, 196–98, 201, 204); *Calder*, 465 U.S. at 789 (concluding that harm from an intentional tort constitutes contact with the state in which the harm is suffered). A "direct causal relationship" therefore exists between Fish, Florida, and this litigation, and thus the relatedness inquiry is satisfied. *See Louis Vuitton*, 736 F.3d at 1355

With respect to the second prong, because this case involves intentional torts,

there are two available tests for determining purposeful availment: the *Calder* "effects test" and the traditional "minimum contacts" test. *See id.* at 1356–58 (citing *Calder*, 465 U.S. at 783). In this case, Fish's purposeful availment exists under the *Calder* test.

Under *Calder*, "a nonresident defendant's single tortious act can establish purposeful availment, without regard to whether the defendant had any other contacts with the forum state." *Louis Vuitton*, 736 F.3d at 1356. The *Calder* Court found that jurisdiction was proper over nonresident defendants who committed an intentional tort that harmed the plaintiff in the forum state—California—despite the defendants' lack of contacts with the forum. *See* 465 U.S. at 788. The Court noted that "[t]he plaintiff's lack of 'contacts' will not defeat otherwise proper jurisdiction," *see id.* at 788 (citation omitted); in doing so, it contemplated the numerous "effects" that the intentional tort had in the forum. *Id.* Namely: (1) the defendant's libelous story concerned the California activities of the California plaintiff; (2) the story impugned the professionalism of the entertainer-plaintiff whose television career was centered in California; (3) the story was drawn from California sources; and (4) "the brunt of the harm, in terms both of [plaintiff's] emotional distress and the injury to her professional reputation, was suffered in California." *Id.* at 788–89.

Third Party Plaintiffs have alleged similar "effects" as a result of the alleged tortious activity of Fish. (*See* Doc. 79.) Specifically, they allege that Fish's conduct "caused harm, the brunt of which is suffered, and which [they] know is likely to be suffered in Florida, Thomas McClary and [FAE]'s home state" (*see* Doc. 55, ¶¶ 9, 12), including damage to McClary's personal reputation, FAE's business reputation (*see id.* ¶¶ 173, 174, 189, 204), and their prospective business opportunities which will affect their business operations in

Florida (*see id.* ¶¶ 196, 197, 198, 201, 204). *See Elandia*, 690 F. Supp. 2d at 1338 (explaining that due process is satisfied when the plaintiff brings suit in the forum where the "effects" or brunt of the harm caused by the defendant's intentional tortious activity was suffered). Accordingly, Fish purposefully availed himself of the benefits of this forum under the *Calder* effects test by way of his tortious conduct.

Finally, the exercise of jurisdiction over Fish comports with traditional notions of fair play and substantial justice. *See Licciardello v. Lovelady*, 544 F.3d 1280, 1288 (11th Cir. 2008). In reaching this conclusion, the Court has considered the burden on the Fish, Florida's interest in adjudicating the dispute, Third Party Plaintiffs' interest in obtaining convenient and effective relief, and the judicial system's interest in resolving the dispute. *See id.* at 1284 (citation omitted). Any burden that this litigation may impose on Fish is outweighed by the allegations that: (1) he participated in affirmative tortious activity directly in Florida (*see* Doc. 55, ¶ 197 (describing the interference with the Tampa Bay Black Heritage Festival)); (2) he caused injury to Third Party Plaintiffs in Florida (*see id.* ¶¶ 173, 174, 189, 196, 197, 198, 201, 204); (3) "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida," *see Licciardello*, 544 F.3d at 1288.; and (4) Floridians injured by the intentional misconduct of a nonresident should not be required to travel to the nonresident's state of residence to obtain a remedy, *see id.*; *Calder*, 465 U.S. at 1487. Further, Fish did not submit evidence—other than an affidavit which merely stated that he does not regularly conduct business or have offices in Florida (Doc. 106-1)—to support his contention that due process would not permit the exercise of jurisdiction over him. *See Elandia*, 690 F. Supp. 2d at 1327 (explaining that defendants can submit affidavits or

other pleadings to challenge the plaintiff's allegations of personal jurisdiction). Once Third

Party Plaintiffs successfully pled sufficient facts to form a basis for personal jurisdiction,

the burden shifted to Fish to challenge the allegations by affidavits or other pleadings.

*See Louis Vuitton*, 736 F.3d at 1355 (stating that it is the defendant's burden to make a

"compelling case" that the exercise of jurisdiction would violate traditional notions of fair

play and substantial justice). Fish was unsuccessful in satisfying his burden.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Third Party Defendant

David Fish's Motion to Dismiss Third Party Plaintiffs' First Amended Third Party Complaint

and Incorporated Memorandum of Law in Support (Doc. 106) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on March 17, 2015.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record