**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

COMMODORES ENTERTAINMENT
CORPORATION,

        Plaintiff/Counter
        Defendant,

v.                                                          Case No. 6:14-cv-1335-Orl-37GJK

THOMAS MCCLARY; and FIFTH
AVENUE ENTERTAINMENT, LLC,

        Defendants/
        Counter Claimants.

**ORDER**

On July 28, 2016, at the conclusion of Defendants' presentation of evidence as to Phase I of the jury trial in this matter, Plaintiff moved for judgment as a matter of law on the issue of trademark ownership (Doc. 358 ("**JMOL Motion**").) The court granted the JMOL Motion on July 28, 2016. (Doc. 359 ("**JMOL Order**").) Subsequently, Defendants' moved to certify the JMOL order under Federal Rule of Civil Procedure 54(b) to allow immediate appeal. (Doc. 363.)

To facilitate appellate review of the Court's JMOL Order, the following order memorializes the Court's oral pronouncement.

———

This contentious trademark action was bifurcated into two phases (Doc. 310). Phase I concerned ownership rights to the service marks and trade name at issue (collectively, the "**Trademarks**"). If necessary, Phase II will concern outstanding issues of infringement, liability, and damages.

Despite the weighted law favoring Plaintiff's position, which was discussed in the Court's preliminary injunction (Doc. 56.)[1] On June 24, 2016, the Court denied the parties' cross motions for summary judgment: (1) based on its finding that the motions established unresolved issues of fact; and (2) in the interest of giving Defendants all possible opportunities to establish Mr. McClary's rights to the trademarks (Doc. 334).

Phase I has since been tried (*see* Docs. 350, 351, 354), and the Court was presented with a motion for judgment as a matter of law.

Federal Rule of Civil Procedure 50 provides that the Court may direct the entry of judgment as a matter of law after trial. On a motion for judgment as a matter of law, the Court "must draw all reasonable inferences in favor of the [non-movant], and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). Such a motion should only be granted if the facts and inferences point "so overwhelmingly in favor" of the movant that a reasonable jury could not arrive at a verdict in favor of the non-movant. *Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F.2d 1441, 1448 (11th Cir. 1991).

Viewing the trial evidence in the light most favorable to Defendants, the Court finds that Plaintiff is entitled to judgment as a matter of law because no reasonable jury could conclude that: (1) Plaintiff *does not* own or have rights to the trademarks at issue; or (2) Mr. McClary *does* own or have rights to the trademarks.

As a threshold matter, in accordance with the Eleventh Circuit's Injunction Opinion, the Court has carefully considered the parties' standing and is satisfied that Plaintiff has

---

[1] The Court's preliminary injunction was affirmed by the U.S. Court of Appeals for the Eleventh Circuit on April 15, 2016. (Doc. 323 ("**Injunction Opinion**").)

standing to bring suit. As for ownership, Thomas McClary, Walter Orange, William King, and the other original members of "The Commodores" acquired common law rights to the trademarks associated with the musical band once the band achieved public fame. *Robi v. Reed*, 173 F.3d 736, 739 (9th Cir. 1999). Defendants contend that any original member of a band who parts ways with it continues to own and hold enforceable rights to those trademarks. The Court disagrees in light of the *Robi* decision, which the Court finds persuasive. There the court observed:

> [n]either the Supreme Court nor the Ninth Circuit [or the Eleventh Circuit, for that matter] has directly discussed the status of a trademark for the name of a musical group when one of its members departs and continues to perform under the group's name. Courts that have confronted this problem have determined that members of a group do not retain rights to use the group's name when they leave the group.

*Id.* The *Robi* court went on to say that "there is no alienable interest at stake that would attach to [a] departing [band] member" and held that, when a band member "left the group, he took no rights to the service mark [at issue] with him. Rather the mark remained with the original group." *Id.* at 740. *Robi* is virtually on all fours with the facts and circumstances in the case presently before the Court. Consequently, as a matter of law, Mr. McClary left behind all of his rights to the Trademarks when he left the band in 1984, and those rights remained with the group, including Mr. Orange and Mr. King. *See id.* Defendants' argument that, as an original "Commodore," Mr. McClary continued to hold enforceable rights to use and exclude others from using the trademarks at issue irrespective of his membership status is unpersuasive and is frankly in stark contrast to the law.[2] *See, e.g.*,

---

[2] Defendants' contention that Mr. McClary did not withdraw from the general partnership formed by the original band members was a tempest in a teapot; under the prevailing authorities, whether Mr. McClary did indeed withdraw *from the partnership* is

3

*id.*; *see also HEC Enters., Ltd. v. Deep Purple, Inc.*, No. 80-02532, 1980 WL 39084, at *2–6 (C.D. Cal. Oct. 3, 1980) (concluding that the remaining members of a band retained common law trademarks ownership rights over the member who left the band).

Upon further evaluation of the relevant authorities, the Court takes this time to distinguish this case from the likes of *Crystal Entertainment & Filmworks, Inc. v. Jurado*, 643 F.3d 1313 (11th Cir. 2011) and *Bell v. Streetwise Records, Ltd.*, 640 F. Supp. 575 (D. Mass. 1986), which require analysis beyond that conducted in *Robi*. For context, the Court will summarize the process by which these courts determine ownership of trademarks, particularly in the context of a musical group. The *Jurado* and *Bell* courts begin their inquiry by determining whether a party established ownership by priority of appropriation. *See Jurado*, 643 F.3d at 1321–22; *Bell*, 640 F. Supp. at 579–80. If not, the courts apply a two-step approach to determine ownership: (1) first, the court should identify the quality or characteristic for which the group is known by the public; and (2) second, it should determine who controls that quality or characteristic. *See, e.g.*, *Jurado*, 643 F.3d at 1322. He who controls the quality or characteristic for which the group is known is deemed the prevailing owner of the trademarks associated with the group. *See id.*

This Court is not only persuaded by that approach, but is bound by the Eleventh Circuit to follow that approach *when the circumstances so require*. However, the circumstances of this case simply do not. *Jurado*, *Bell*, and other courts that employed this method, did so when faced with the question of whether the trademarks at issue were

---

irrelevant to his ownership of the Trademarks. There is no question of fact regarding whether Mr. McClary left *the band* to start a solo career, which is all that is required by *Robi* to extinguish his rights.

4

owned by the band members or some other party who was not an actual member of the band. *See, e.g.*, *id.* (determining ownership between an entertainment company that had created a dance band and the members of that band); *Bell*, 640 F. Supp. 575 (determining ownership between the members of a singing group and a record company that produced the group's hit album); *Rick v. Buchansky*, 609 F. Supp. 1522 (S.D.N.Y. 1985) (determining ownership between a manager of a musical group and the members of that group); *see also Ligotti v. Garofalo*, 562 F. Supp. 2d 204 (D.N.H. 2008) (determining ownership between a cigar shop owner and the performer who appeared in internet advertisements for the shop). Such is not the case in this action between current and former band members. Even if it were, it would not alter the outcome.

In the event that the ownership inquiry is guided by the *Jurado* analysis, the evidence conclusively established that: (1) "The Commodores" is known for the entertainment services provided by the band—namely the personalities and performance styles of the members and the band's unique sound; and (2) Mr. King and Mr. Orange have maintained control of that quality or characteristic since Mr. McClary left the band in 1984. Mr. McClary's acceptance of royalties and sporadic performances with the group over the past twenty-plus years is inconsequential when compared to the activity and unfettered control over the group that Mr. King and Mr. Orange have exercised since the departure of Mr. Richie and Mr. McClary in the early 1980's. Indeed, the facts are so overwhelmingly in favor of Plaintiff on that issue that no reasonable juror could conclude that, since his departure from "The Commodores" in 1984, Mr. McClary exercised *any* control over the quality and characteristics of the band.

Further, the evidence conclusively established that Mr. King and Mr. Orange made

valid assignments of their ownership rights in the Trademarks to Plaintiff. Thus, Plaintiff now owns the rights to the Trademarks.

Accordingly, the Preliminary Injunction issued at Doc. 56 is hereby converted to a Permanent Injunction in favor of the Plaintiff. The case will proceed to Phase II to determine the Plaintiff's damages. The Court will enter a scheduling order for Phase II by separate Order.

———

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 24, 2016.



ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record