UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

COMMODORES ENTERTAINMENT
CORPORATION,

    Plaintiff/Counter-Defendant

v.                                        Case No. 6:14-cv-1335-Orl-37GJK

THOMAS MCCLARY; and FIFTH
AVENUE ENTERTAINMENT, LLC,

    Defendants/Counterclaimants

---

THOMAS MCCLARY; and FIFTH
AVENUE ENTERTAINMENT, LLC,

    Third Party Plaintiffs,

v.

DAVID FISH; WILLIAM KING;
WALTER ORANGE; and DOES 1-100,

    Third Party Defendants.

---

**ORDER**

Before the Court is another farewell tour in this long-running trademark dispute. Specifically, Plaintiff Commodores Entertainment Company's ("**CEC**") Motion for Summary Judgment (Doc. 411 ("**SJ Motion**")) and Defendants Thomas McClary ("**McClary**") and Fifth Avenue Entertainment, LLC's ("**Fifth Avenue**") response (Doc. 417). On review, the SJ Motion is due to be granted in part and denied in part.

I. **PROCEDURAL HISTORY**

This action requires no opening act: so the Court repeats only the procedural history necessary to resolve the SJ Motion. CEC initiated this action alleging that McClary and Fifth Avenue infringed CEC's trademarks related to the band "The Commodores" ("**Marks**"). (Doc. 1.) McClary and Fifth Avenue then separately answered the complaint and filed counterclaims against CEC. (Docs. 59, 79.) McClary and Fifth Avenue also filed a third-party complaint against several individuals and two entities they claimed were distinct from CEC—"Commodores Entertainment Corp." and "Commodore Entertainment Corp." (collectively, "**Commodore Corp**"). (Doc. 55.) After whittling down the Third-Party Defendants, three remain—David Fish, William King, and Walter Orange (collectively with CEC, "**Movants**"). (*See* Doc. 197 (striking Commodore Corp and rejecting the theory that they were in fact separate from CEC).)

The Court then bifurcated this action into two phases: "Phase I" focused on ownership of the Marks and Phase II covers liability and damages. (Doc. 310.) Having concluded that CEC owns the Marks, Phase I has been resolved. *See Commodores Entm't Corp. v. McClary*, 879 F.3d 1114, 1132–33 (11th Cir. 2018), *cert. docketed* (affirming the district court's grant of judgment as a matter of law on the issue of CEC's ownership in the Marks). With this, the Court directed the parties to submit a joint notice identifying the remaining claims for Phase II. (Doc. 403 ("**Joint Notice**").) The Court then set the matter for a Preliminary Pretrial Conference ("**PPTC**") and allowed the parties to move for summary judgment on claims the parties believed were capable of resolution as a matter of law. (Doc. 406.) CEC then filed the SJ Motion (Doc. 411) and McClary and Fifth

Avenue responded (Doc. 417). At the PPTC, the Court heard argument on the SJ Motion and the claims raised in the Joint Notice and made several rulings from the bench. (*See* Doc. 422.) This Order follows.

## II.   LEGAL STANDARD

Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and that [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). As to issues for which the movant would bear the burden of proof at trial, it must affirmatively show the absence of a genuine issue of material fact and support its motion with credible evidence demonstrating that no reasonable jury could find for the nonmoving party on all of the essential elements of its case. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (citing *United States v. Four Parcels of Real Prop. in Green & Tuscaloosa Ctys*, 941, F.2d 1428, 1438 (11th Cir. 1991)).

As to issues for which the nonmovant would bear the burden of proof at trial, the movant has two options: (1) it may simply point out an absence of evidence to support the nonmoving party's case; or (2) it may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Four Parcels*, 941 F.2d at 1438 (citing *Celotex Corp.*, 477 U.S. at 325). "The burden then shifts to the nonmoving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick*, 2 F.3d at 1115–17).

"A factual dispute is genuine 'if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the nonmovant, *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), such that "when conflict arises between the facts evidenced by the parties, [the] court credit[s] the nonmoving party's version," *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005). However, "[the] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.    ANALYSIS

The remaining claims for resolution in Phase II arise from four pleadings: (1) CEC's Complaint (Doc. 1); (2) McClary's First Amended Verified Counterclaim against CEC (Doc. 79); (3) Fifth Avenue's Counterclaim against CEC (Doc. 59); and (4) McClary and Fifth Avenue's Third-Party Complaint (Doc. 55). Given the overlapping nature of these claims, the Court has grouped them where appropriate. The Court begins with CEC's affirmative claims.

**A.    CEC's Complaint**

In CEC's eight-count Complaint, it seeks damages and attorney fees under several

theories of liability, including: (1) trademark infringement under 15 U.S.C. § 1114 ("**Count 1**"); false designation of origin under § 1125(a) ("**Count 2**"); trademark dilution under § 1125(c) ("**Count 3**"); passing off under § 1125(a) ("**Count 4**"); false advertising under § 1125(a)(1)(B) ("**Count 5**"); common law trademark infringement and unfair competition ("**Count 7**"); and violation of Florida's Deceptive and Unfair Trade Practices Act ("**Count 8**").[1] (Doc. 1, ¶¶ 68–115, 120–136.) The elements of Counts 2, 3, 4, 5, and 7 mirror those of Count 1, so the Court first considers Count 1.

As to Count 1, the Court found that CEC was entitled to summary judgment, as § 1114(1) requires a showing that: "(1) its marks [were] used in commerce by the defendant without the [plaintiff's] consent and (2) the unauthorized use was likely to cause confusion, or to cause mistake or to deceive." *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (quoting *Burger King Corp. v. Mason*, 710 F.2d 1480, 1491 (11th Cir. 1983)). At the PPTC, the parties agreed that CEC's Marks were used in commerce without CEC's consent. As for the second element—likelihood of confusion—the Court concluded that its previous finding related to the issuance of the permanent injunction conclusively establishes that a likelihood of confusion existed between "The Commodores" and McClary's band. (*See* Doc. 56, p. 7; Doc. 364.) So the SJ Motion is due to be granted as to Count 1 of the Complaint. From there, the Court found that Counts 2, 3, 4, 5, and 7 were duplicative and deemed them abandoned. The Court will thus dismiss these claims and deny the SJ Motion as moot as

---

[1] CEC's claim for damages, although raised in the Joint Notice, is not part of its SJ Motion. (*See* Doc. 411, p. 1 n.1.)

to those Counts of the Complaint.

For the remaining Count 8, CEC explained at the PPTC that it intended to pursue its claim under Florida's Deceptive and Unfair Trade Practices Act ("**FDUTPA**"). FDUTPA declares unlawful "unfair or deceptive acts or practices" committed "in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). A FDUTPA claim has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins, Inc. v. Butland*, 851 So. 2d 860, 869 (Fla. 2d DCA 2006)). CEC claims that infringing its Marks also violates FDUTPA. (*See* Doc. 1, ¶¶ 132–133.)

Now that such infringement has been established, CEC claims that it is necessarily entitled to summary judgment on Count 8 because the same legal standards applied to Lanham Act claims also apply to FDUTPA claims. (Doc. 411, pp. 11–12.) True, trademark infringement is an unfair and deceptive trade practice that constitutes a violation of FDUTPA. *See, e.g.*, *TracFone Wireless, Inc. v. GSM Grp.*, 555 F. Supp. 2d 1331 (S.D. Fla. 2008). But there are still two elements CEC must prove to prevail on this claim: causation and actual damages. *See Dolphin LLC*, 715 F.3d at 1250. As CEC briefed only the first element, the Court cannot grant summary judgment on this claim.[2] (*See* Doc. 411, pp. 11–12.) So the SJ Motion is due to be denied as to Count 8.

---

[2] At the PPTC, CEC's counsel suggested that CEC's actual damages amounted to $110,000. But counsel's unsupported approximations do not suffice as proof for summary judgment purposes.

**B.     Counterclaims and Third-Party Claims**

Next, the Court turns to McClary's twelve counterclaims (Doc. 79), Fifth Avenue's three counterclaims (Doc. 59), and McClary and Fifth Avenue's fifteen-count Third-Party Complaint (Doc. 55). Such claims fall into two categories: (1) claims either abandoned or resolved in Phase I; and (2) claims Movants include in the SJ Motion.

**1.     Abandoned Counterclaims**

Falling squarely with the first category are all three of Fifth Avenue's counterclaims, which allege theories of liability for: (1) defamation/business disparagement; (2) interference with present economic opportunities; and (3) interference with prospective economic opportunities. (Doc. 59, ¶¶ 62–98.) Because the parties failed to raise these counterclaims in the Joint Notice, Fifth Avenue abandoned them. Thus, they are due to be dismissed.

McClary also did not raise all his counterclaims in the Joint Notice. (*See* Doc. 403, pp. 2–4.) He has thus abandoned the following six counterclaims: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125(a); (3) passing off under § 1125(a); (4) trademark dilution by tarnishment under § 1125(c)(2)(C); (5) common law trademark infringement; and (6) declaratory judgment concerning McClary's ownership of the Marks ("**Counterclaim 7**"). (Doc. 79, ¶¶ 67–126, 141–157.) Thus, these Counterclaims will be dismissed accordingly.[3]

---

[3] In resolving Phase I, the Court granted judgment as a matter of law in favor of CEC on the issue of ownership ("**JMOL Order**"). (Doc. 364.) The JMOL Order did not delineate which claims, if any, were resolved. The effect of the JMOL Order likely resolved Counterclaim 7. Nevertheless, in an abundance of caution, the Court dismisses

## 2.    Abandoned Third-Party Claims

McClary and Fifth Avenue assert several claims against Third-Party Defendants Commodore Corp, William King ("**Mr. King**"), David Fish ("**Mr. Fish**"), and Walter Orange ("**Mr. Orange**"). (*See* Doc. 55.) McClary and Fifth Avenue, however, did not preserve the following ten third-party claims in the Joint Notice: (1) trademark infringement under 15 U.S.C. § 1114; (2) unfair competition under 15 U.S.C. § 1125(a); (3) passing off under § 1125(a); (4) trademark dilution by tarnishment under § 1125(c)(2)(C); (5) common law trademark infringement; (6) cancellation of the Marks ("**Third-Party Claim 6**"); (7) commercial misappropriation; (8) declaratory relief concerning McClary's ownership of the Marks ("**Third-Party Claim 8**"); (9) FDUTPA; (10) request for an accounting. (Doc. 55, ¶¶ 67–167, 250–265.) Accordingly, these Third-Party Claims will be dismissed.[4]

## 3.    Claims addressed in the SJ Motion

What remains are those counterclaims and third-party claims for which CEC contends it is entitled to summary judgment. (*See* Doc. 411, pp. 12–22.) Specifically, CEC moves for summary judgment on McClary's Counterclaims for: (1) commercial misappropriation ("**Commercial Misappropriation Counterclaim**"); and (2) violation of FDUTPA ("**FDUTPA Counterclaim**"). (*Id.* at 12–14.) CEC also moves for summary

---

it at this stage.
    [4] As with Counterclaim 7, the effect of the JMOL Order likely resolved Third-Party Claims 6 and 8. Nevertheless, in an abundance of caution, the Court dismisses these claims at this stage.

judgment on three sets of identical counterclaims and third-party claims: (1) defamation/business disparagement ("**Defamation Claims**"); (2) interference with present and prospective economic opportunities; and (3) interference with prospective economic opportunities (collectively, "**Interference Claims**"). (*Id.* at 14–20.) Finally, CEC moves for summary judgment on two third-party claims asserted against only Mr. King and Mr. Orange: (1) breach of duty of loyalty and utmost good faith; and (2) breach of fiduciary duty (collectively, "**Breach Claims**"). (*Id.* at 20–22.) Viewing the evidence in the light most favorable to McClary and Fifth Avenue, the Court finds that CEC is entitled to judgment as a matter of law on these counterclaims and third-party claims.

### a. Commercial Misappropriation Counterclaim

In Counterclaim 6, McClary asserts a claim for commercial misappropriation under Florida Statute § 540.08(1). Section 540.08(1) prohibits a person from "publish[ing], print[ing], display[ing] or otherwise publicly [using] for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural purpose without" that person's "express written or oral consent." According to McClary, CEC violated Florida law by using McClary's picture on social media sites like Facebook to promote The Commodores. (Doc. 79, ¶¶ 136–138.) CEC refutes these allegations. (*See* Doc. 411, p. 13.) For his part, McClary relies on copies of "The Commodores" Facebook page that he maintains CEC operates. (*See* Doc. 417-5, pp. 2–11.) But the Facebook page does not establish that CEC created, maintained, or controlled the social medial page. (*See id.*) At the PPTC, CEC's counsel argued that the Facebook page referenced by McClary is not affiliated with CEC. In support, CEC pointed to an

"unsworn" declaration of Mr. King, current member of The Commodores and CEC's president, submitted pursuant to 28 U.S.C. § 1746(2).[5] (Doc. 411-1.) In it, Mr. King stated that CEC does not have a Facebook page. (*Id.* ¶ 6.) McClary submitted no rebuttal evidence.

Here, Mr. King's declaration contains the language spelled out in § 1746(2). (*See* Doc. 411-1, p. 2.) The Court will accept Mr. King's declaration and treat it as an affidavit for summary judgment purposes. *Four Parcels*, 941 F.2d at 1444 n.36. Accepting Mr. King's declaration, the Court finds that CEC has carried its burden on summary judgment. *See Four Parcels*, 941 F.2d at 1438 (noting that to satisfy its burden the movant may point to affirmative evidence). So the SJ Motion is due to be granted as to McClary's Commercial Misappropriation Counterclaim.

      **b.**      **FDUTPA Counterclaim**

In Counterclaim 8, McClary asserts that CEC violated FDUTPA by infringing his trademark. (Doc. 79, ¶ 160.) As noted above, FDUTPA requires three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Dolphin LLC*,

---

[5] When ruling on motion for summary judgment, a court may consider, among other things, affidavits submitted by the parties. *See* Fed. R. Civ. P. 56(c). Courts have defined an affidavit as "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public. *See Tishcon Corp. v. Soundview Comm'ns, Inc.*, No. 1:04-cv-524-JEC, 2005 WL 6038743, at *3 (N.D. Ga. Feb. 15, 2005). For summary judgment purposes, an unsworn declaration may be given the same force and effect as an affidavit if it is signed, dated, and includes language in substantially the following form: "I declare (or certify, verify, state) under penalty of perjury . . . that the foregoing true and correct." 28 U.S.C. § 1746(2); *see also Four Parcels*, 941 F.2d at 1444 n.36 (noting that for summary judgment purposes, a court may consider a declaration executed in accordance with § 1746 as an affidavit).

715 F.3d at 1250. Having established that McClary maintained no ownership rights in the Marks, he cannot establish that CEC infringed his trademark and thus cannot establish a violation of FDUTPA based on trademark infringement. *See Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1323 (11th Cir. 2011) (holding that the plaintiff's FDUTPA claim failed where he had no enforceable rights in the trademark at issue "because the legal standards [a court applies] to [a FDUTPA] claim are the same as those . . . applied under section 43(a) of the Lanham Act"). So McClary's FDUTPA Counterclaim fails as a matter of law.

   **c.**  **Defamation Claims**

McClary and Fifth Avenue also bring a counterclaim and third-party claim for defamation/business disparagement against Movants based on Mr. Fish's allegedly false communications with non-parties representing that McClary was enjoined from any use of CEC's Marks. (Doc. 79, ¶ 170; Doc. 55, ¶ 170.) Florida law requires a defamation plaintiff to show: "(1) publication; (2) falsity; (3) the actor acted with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement is defamatory." *Jews For Jesus, Inc. v. Rapp,* 997 So. 2d 1098, 1106 (Fla. 2008). But if the plaintiff is a public figure, he must also demonstrate with clear and convincing evidence "actual malice" by the person publishing the statement. *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80 (1964). "[A] public figure plaintiff must establish that the disseminator of the information either knew the alleged defamatory statements were false or published them with reckless disregard despite awareness of their probable

falsity." *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. 4th DCA 2002) (citation omitted).

At the PPTC, McClary and Fifth Avenue focus on Mr. Fish's communications to non-parties. They insist that because McClary is permitted to make fair use of CEC's marks, Mr. Fish's emails representing that McClary could not make *any* use of the Marks was false and misrepresented the Court's preliminary injunction. According to McClary and Fifth Avenue, Mr. Fish demonstrated reckless disregard for the truth because he did not know what fair use meant and made no effort to ascertain its meaning, despite an obligation to do so. But a review of Mr. Fish's emails belies their claims. All they reveal is that: (1) Mr. Fish directed one recipient to the Court's Order concerning the preliminary injunction; and (2) Mr. Fish requested contact information concerning a promotor because he had become aware that a band was marketing itself as The Commodores. (Doc. 417-4, pp. 7, 11.) With this context, Mr. Fish's communications were not false, nor did they misrepresent the Court's preliminary injunction. Hence the Defamation Claims fail, so the Court will grant the SJ Motion as to them.

### d. Interference Claims

McClary and Fifth Avenue next assert counterclaims and third-party claims for present and prospective interference with economic opportunities. (Doc. 55, ¶¶ 178–207; Doc. 79, ¶¶ 179–227.) The interference with *present* economic opportunities claim rests on Mr. Fish's alleged misrepresentations and threats of legal action to the Westhampton Beach Performing Arts Center ("**Center**"), with whom McClary and Fifth Avenue had an existing performance contract. (*See* Doc. 55, ¶¶ 182–188.) Specifically, McClary and Fifth

Avenue allege that the Center had a "standard policy" to "automatically book the act for the following year to come back." (Doc. 55, ¶ 187). But following McClary's show, under which he performed as "The Commodores featuring Thomas McClary," the Center's Director, James Burke, said he "couldn't honor the policy to immediately re-book." (*Id.* ¶ 188). Beyond this, McClary alleges that following the entry of the Court's preliminary injunction, CEC sent "blast e-mails" throughout the industry threatening promoters and agents with litigation in booking McClary under the offending band name. (*See* Doc. 79, ¶¶ 192–196.)

Similarly, the interference with *prospective* economic opportunities claim arises from Mr. Fish's alleged communications with booking agents and talent buyers in the industry which stated that McClary had no right to use "The Commodores" Marks and threatened legal action for booking McClary's band. (*Id.* ¶¶ 206–213.) McClary and Fifth Avenue allege that such conduct interfered with prospective economic relationships to appear at the Tampa Bay Black Heritage Festival ("**Festival**") and with prospective relationships with an Italian promoter, Luigi Sidero, and a U.S. promoter, Carlos Keyes ("**Mr. Keyes**"). (Doc. 55, ¶¶ 197–200; Doc. 79 ¶¶ 206, 216–218.)

The elements of tortious interference with a present or prospective business relationship are: "(1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." *Int'l Sales & Servs., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (citing *Ethan Allen, Inc. v. Georgetown*

*Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994)). Such a relationship need not be evidenced by a contract but requires "an understanding between the parties [that] would have been contemplated had the defendant not interfered." *Ethan Allen*, 647 So. 2d at 814.

The thrust of CEC's argument at the PPTC is that its communications were not the source of any interference; rather, it was the Court's preliminary injunction that caused promotors and venues to cancel shows for McClary under the name "The Commodores featuring Thomas McClary." In support, CEC points to Mr. Keyes' deposition testimony stating that the Festival no longer wanted to book McClary once he could no longer perform under "The Commodores featuring Thomas McClary." (Doc. 277-7, p. 14.) In its briefing, CEC further contends that its communications with venues and promotors were privileged as a competitor and owner of the Marks. (Doc. 411, p. 20) McClary retorts that the "unsworn" declaration of John Hessenthaler, a British music promoter, stating "[b]ecause of interference from David Fish writing threatening letter to venues [McClary's] show in Croydon was cancelled. This reduced the contract to (5) shows at $70,834" establishes a genuine issue of material fact as to CEC's interference.[6] (Doc. 417-4, ¶ 7.) The Court disagrees with McClary.

Not all interference is actionable. Indeed "[t]here can be no claim [for tortious interference with a business relationship] where the action complained of is undertaken

---

[6] McClary submitted an unsigned Hessenthaler Declaration. (Doc. 417-4, p. 4.) A single page then follows the Hessenthaler Declaration that appears to be a duplicate final page of the Hessenthaler Declaration with a signature. (*Id.* at 5.) Despite the confusion, the Court will accept this declaration and treat it as an affidavit under § 1746(2) for summary judgment purposes.

to safeguard or promote one's financial or economic interest." *Genet Co. v. Anneuser-Busch, Inc.*, 498 So. 2d 683, 684 (Fla. 3d DCA 1986). To establish this "competition privilege," a defendant must show that: (1) the plaintiff's business relationship concerned a matter involved in the competition between the plaintiff and defendant; (2) it did not employ improper means; (3) it did not intend to create or continue an illegal restraint of competition; and (4) its purpose was at least in part to advance its interest in competing with the plaintiff. *Austral*, 262 F.3d at 1159. Whether "interference with a business relationship is privileged depends upon a balancing of the importance . . . of the objective advanced by the interference against the importance of the interest interfered with, considering all the circumstances among which the methods and means used and the relation of the parties are important." *Id.* (internal quotations omitted). As it stands, because CEC rightfully owns the Marks, its truthful communications with venues and promoters were justified by the competition privilege. McClary's evidence does not alter this conclusion. Hence the SJ Motion is due to be granted on the Interference Claims.

      e.    **Breach Claims**

In Counts 13 and 14 of the Third-Party Complaint, McClary and Fifth Avenue allege that Mr. King and Mr. Orange breached the duty of loyalty and utmost good faith and their fiduciary duties by denouncing McClary's rights as a shareholder in CEC and failing to follow corporate formalities. (Doc. 55, ¶¶ 208–249.)

CEC argues that McClary's shares in CEC were cancelled when he left The Commodores. (Doc. 411, p. 21.) In support, CEC draws the Court's attention to Mr. King's statements acknowledging McClary's resignation and cancellation of his shares.

(Doc. 411-1, ¶¶ 10, 11.) CEC also submits McClary's cancelled stock certificate. (Doc. 411-2.) To counter this evidence, McClary quibbles with the authenticity of the stock certificate. (*See* Doc. 417, pp. 24–25.) Absent evidence, McClary has not established a genuine issue of material fact as to his status as a CEC shareholder. So the SJ Motion is due to be granted as to the Breach Claims.[7] When the music stops, only CEC's claims for damages under 15 U.S.C. § 1117 and FDUTPA remain viable.

### IV.   CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Commodores Entertainment Corporation Motion for Partial Summary Judgment as to the Complaint, First Amended Verified Answer and Counterclaim by Thomas McClary, and the First Amended Third Party Complaint (Doc. 411) is **GRANTED IN PART AND DENIED IN PART**.

   a. The motion is granted as to: (1) Count 1 of the Complaint (Doc. 1, ¶¶ 68–77); McClary's Counterclaims 6 and 8–11 (Doc. 79, ¶¶ 135–140, 158–227); and Counts 10–14 of McClary and Fifth Avenue's Third-Party Complaint (Doc. 55, ¶¶ 168–249).

   b. The motion is denied as moot as to: Counts 2–5 and 7 of the Complaint (Doc. 1, ¶¶ 78–115, 120–130).

---

[7] In the Joint Notice, the parties raised McClary's counterclaim for an accounting ("**Counterclaim 12**"). (Doc. 403, p. 4; Doc. 79, ¶¶ 228–243.) CEC, however, did not move for summary judgment on this claim (*see* Doc. 411), but McClary's counsel did present argument on it at the PPTC. Because the Court finds that McClary is not a CEC shareholder, Counterclaim 12 fails as a matter of law and is due to be dismissed.

    c.    The motion is denied as to Count 8 of the Complaint (Doc. 1, ¶¶ 131–136).

2. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff Commodores Entertainment Corporation and against Defendants Thomas McClary and Fifth Avenue Entertainment, LLC on Count 1 of the Complaint (Doc. 1, ¶¶ 68–77).

3. The following claims are deemed abandoned to the extent they were not resolved in Phase I and are **DISMISSED WITH PREJUDICE**: Counts 2–5 and 7 of the Complaint (Doc. 1, ¶¶ 78–115, 120–130); McClary's Counterclaims 1–5 and 7 (Doc. 79, ¶¶ 67–126, 141–157); Fifth Avenue's Counterclaims 1–3 (Doc. 59, ¶¶ 62–98); and Counts 1–9 and 15 of the Third-Party Complaint (Doc. 55, ¶¶ 67–167, 250–265).

4. McClary's Counterclaim 12 (Doc. 79, ¶¶ 228–243) is **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 23, 2018.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record