UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

COMMODORES ENTERTAINMENT
CORPORATION,

        Plaintiff,

v.

THOMAS McCLARY, and FIFTH AVENUE
ENTERTAINMENT, LLC,

        Defendants.

_____/

CASE NO. 6:14-cv-01335-RBD-GJK

# DEFENDANTS' OPPOSITION TO MOTION FOR ATTORNEYS' FEES AND COSTS

Defendants, Thomas McClary and Fifth Avenue Entertainment, by and through their counsel of record, Marie Mirch, hereby oppose Plaintiff Commodores Entertainment Corporation's (CEC) motion for attorneys' fees pursuant to 15 U.S.C. §1117(a) and costs pursuant to Federal Rule of Civil Procedure 54(d). This opposition is based on the following memorandum of points and authorities, exhibits, pleadings and orders on file herein.

///

///

///

## MEMORANDUM OF POINTS AND AUTHORITIES

## I

## FACTS

The Court is well familiar with this trademark dispute between Thomas McClary, the founder and an original member of The Commodores, and Commodores Entertainment Corporation. ("CEC"). It is an undisputed fact that in 1968 the individual band members, Thomas McClary, Lionel Richie, Walter Orange, William King, Ronald LaPread, and Milan Williams established and owned the Commodores trademarks. The Plaintiff, Commodores Entertainment Corporation was incorporated in 1978. The original band members that have remained with the group are Walter Orange and William King. Neither of these band members is a plaintiff in this action.[#1]

On August 19, 2014, CEC filed a Complaint for Injunctive Relief and for Damages against Mr. McClary and Fifth Avenue Entertainment, LLC. [#1]. The Court entered a preliminary injunction against the Defendants prohibiting the use of the "Commodores" trademark with the exception of fair use. [ # 56]. Defendants appealed the preliminary injunction. The Court of Appeals ruled in CEC's favor on 4/16/16.

Ownership of the marks was a highly contested issue. CEC claimed exclusive ownership of the trademarks, while Thomas McClary claimed that he, as a founder of the group still owned a contemporaneous common law interest in the trademark, as did the other band members William King and Walter Orange. Defendants further claimed that CEC did

not have standing to file suit because the marks were owned by individual band members not the corporation.

The Court bifurcated the case into two parts. The first part was to determine ownership of the trademarks. This phase went to trial and the Court granted Judgment as a Matter of Law in favor of CEC. Defendants appealed the JMOL, which the 11th Circuit Court of Appeals Affirmed. Defendants filed a motion for rehearing that was denied on April 4, 2018. CEC did not seek appellate fees or costs on either of the appeals.

On August 23, 2018, the Court entered summary judgment in favor of CEC on the first count alleged in the Complaint - Trademark Infringement. Judgment was entered on August 24, 2018 in favor of CEC on the First Count of Trademark Infringement.

CEC filed its motion for attorneys' fees and costs seventeen days later on September 10, 2018.

## II

## LEGAL ANALYSIS AND ARGUMENT

a. **CEC's Motion is Untimely**

In 2016, new rule changes for federal courts, including in the area of electronic service and filing went into effect. A major change was made regarding electronic filing in federal courts with the amendments to Federal Rule of Civil Procedure 6(d). Formerly, the deadline to act after being served where service was made by mail, electronic means, or other means consented to, was extended by three days. Thus, under the prior rule, e-service

extended the time to act by three days under the F.R.C.P.  Effective December 1, 2016, Rule 6(d) was amended to remove service by electronic means from the modes of service that provide three added days to act after being served. Federal Rules of Civil Procedure, 2016-2017 Amendments. The Notes of Advisory Committee on 2016 Amendments state that Rule 6(d) is amended to remove service by electronic means under Rule 5(b)(2)(E) from the modes of service that allow 3 added days to act after being served.  In amending Rule 6(d), the Committee observed that advances in technology made electronic transmission of documents nearly instantaneous, the three-day extension has become unnecessary. For these reasons, the federal rules no longer allow for the addition of three days to the calculation of time to act when electronically served.

Judgment was entered in this case on August 24, 2018.  Pursuant to Local Rule 4.18(a) CEC had 14 days from entry of judgment to file its application for costs or motion for attorney's fees. The motion was due on September 7, 2018.  CEC filed its motion for attorneys' fees and costs on September 10, 2018.  The motion is late. On this basis alone CEC's motion must be denied. *Clark v. Hous. Auth. of Alma*, 971 F.2d 723, 727 (11th Cir. 1992).

Further, to the extent that CEC may be seeking fees incurred in the two appeals, CEC has failed to comply with 11th Cir. Rule 39-2, which requires an application for fees to be filed within 14 days after the time to file a petition for rehearing has passed or 14 days after a petition for rehearing is denied, whichever is later.  CEC's motion is well beyond the 14

day requirement, it has been years since the first appeal, and months since the second. The late motion must be denied. CEC cannot recover fees incurred for the appeal, not only because the motion is untimely, but it has failed to comply with the requirements for a motion for attorneys' fees under 11th Cir.Rule 39-2, including contemporaneous time records recording all work for which a fee is claimed.

b. **Authority for award of attorneys' fees**

Under the "American Rule" of apportioning the costs of litigation, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975). However, there are exceptions to the American Rule. One exception is recovery of attorneys' fees if provided by statute. In this trademark infringement case, fees *might* be available pursuant to 15 USC 1117(a), "the court in exceptional cases may award reasonable attorney fees to the prevailing party". CEC seeks attorneys' fees and costs under this statute. The amount of fees that CEC seeks to recover is included in the Declaration of Dean Kent, but is unclear. Paragraph 18 of the declaration identifies $880,785.00 in attorneys' fees that were to be billed, and $635,498.94 in what was actually billed to CEC. Either way, the Court cannot award fees.

This is not an exceptional case, which is a requirement for a statutory award of fees under 15 U.S.C. §1117. Further, even if the Court determined the case is exceptional, CEC still is not entitled to fees. CEC has failed to offer the evidence required for the Court to

determine what is reasonable. Without billing records, defendants cannot make specific objections to billings that may be duplicative, unnecessary, or improper. The Court also needs the billing records to make a determination of what is reasonable.

### 1. The case is not exceptional

The Lanham Act permits the Court "in exceptional cases" to award reasonable attorneys' fees to the prevailing party on a claim for unfair competition. 15 U.S.C. § 1117(a); *Montgomery v. Noga,* 168 F.3d 1282, 1304 (11th Cir. 1999). Even in exceptional cases, the decision whether to award attorneys' fees remains within the discretion of the Court. *Burger King Corp. v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994) (citing *Dieter v. B & H Indus. of Sw. Fla.*, 880 F.2d 322, 329 (11th Cir. 1989)). The standard for finding an exceptional case is set forth *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S. Ct. 1749, 188 L. Ed. 2d 816 (2014) ("Octane Fitness"). An "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position, considering both the governing law and the facts of the case, or the unreasonable manner in which the case was litigated. District Courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances. "Using this case-by-case approach, some courts have declined to award fees. See, e.g., *Checkpoint Sys. Inc. v. All-Tag Security, S.A.*, 858 F.3d 1371, 1376-77 (Fed. Cir. 2017) (reversing a fee award after finding that the infringement claims were reasonable and the litigation was not in bad faith or abusive); *Peschke Map Techs. LLC v. Miromar Dev. Corp.*,

No. 2:15-CV-173-FTM-38MRM, 2017 U.S. Dist. LEXIS 36881, 2017 WL 991481, at *3 (M.D. Fla. Mar. 15, 2017) (declining to award fees because plaintiff's litigation representations did not meet the exceptionality threshold); *Freedom Sci., Inc. v. Enhanced Vision Sys., Inc.*, No. 8:14-CV-1229-T- 36JSS, 2016 U.S. Dist. LEXIS 64710, 2016 WL 2865353, at *3 (M.D. Fla. May 17, 2016) (although plaintiff's counsel's conduct left much to be desired, it was not so unreasonable as to warrant a finding of exceptionality); *Commonwealth Labs., Inc. v. Quintron Instrument Co., Inc.*, No. 14-20083-CV, 2015 U.S. Dist. LEXIS 176136, 2015 WL 11216332, at *7 (S.D. Fla. July 20, 2015) (finding that the limited record did not establish exceptionality by preponderance of evidence), report and recommendation adopted, No. 14-CV-20083, 2015 U.S. Dist. LEXIS 176133, 2015 WL 11216331 (S.D. Fla. Aug. 14, 2015); *Net Talk.com v. MagicJack VocalTec Ltd.*, No. 12-CV-81022, 2015 U.S. Dist. LEXIS 175993, 2015 WL 10015379, at *6 (S.D. Fla. Nov. 20, 2015) (noting that although Octane Fitness loosened the framework, exceptionality remained the exception to the rule); *NXP B.V. v. Blackberry, Ltd.*, 58 F. Supp. 3d 1313, 1323 (M.D. Fla. 2014) ("Although Octane [Fitness] eased the standard for fee-shifting and reduced the prevailing party's burden . . . to a preponderance of evidence, post-Octane [Fitness] decisions awarding fees have concerned egregious behavior.")." *Shipping & Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290, 1296, (S.D. Fla 2017).

Examining the  the totality of the circumstances, this case is not exceptional. Under Octane Fitness, a court evaluates two factors in determining whether a case is exceptional.

Under the first factor, the court considers whether a case is exceptional based on the substantive strength of a party's litigating position (considering both the governing law and the facts). Under the second factor, the court considers whether the case is exceptional based on the unreasonable manner in which the case was litigated. Neither of these factors are present in this case.

### 2. Strength of parties' litigating position

Defendants' litigation position was very strong in this case. Unlike other cases CEC cites in its brief, the Defendant at one time held ownership in the marks. There was never a dispute that the individual band members, including Thomas McClary had priority of use and ownership in the trademark. King and Orange had the same priority of use and ownership, and it has never been disputed that they each individually held ownership right in the marks. McClary was claiming his individual ownership.

However, neither King or Orange sued McClary. Ownership and priority rights to the mark at issue is the first element in a trademark infringement claim. *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir.2001).

Mr. McClary and Fifth Avenue Entertainment had a legitimate argument against **CEC's** claimed ownership or rights to The Commodores mark. There was never a dispute that the individual members of the group "The Commodores", including Mr. McClary, established and owned the trademark. The district court and the court of appeals both concluded that the original band members of The Commodores acquired common law

ownership. JMOL Order at page 6 [# 56 p 6), 11th Cir Opinion (#391 p. 27). The strength of Mr. McClary's defense was that the individual band members never transferred their common law rights to CEC, and therefore CEC did not have standing to sue for trademark infringement.

There was never any clear evidence that the partnership or the individuals transferred ownership and goodwill of the marks to CEC. Nonetheless, the Court attributed King and Orange's control and use of the marks to CEC, and ruled that McClary had abandoned the mark.

The 11th Circuit Court of Appeals recognized the standing issue in the first appeal of the preliminary injunction. While it held "At this early stage of litigation, we conclude that CEC has sufficiently shown standing to seek a preliminary injunction", it also directed the district court to "clarify and address comprehensively any issues surrounding the parties' standing as this litigation progresses". The 11th Circuit saw the issue important enough to direct the district court to address the issue comprehensively. This issue was addressed by repeated statements that the remaining band members owned the mark.

For example the second opinion from the 11th Circuit has many references to the remaining individual band members' (Orange and King) ownership of the marks: "Therefore, the original group had, at one point in time, common-law rights to the marks. McClary, as a member of the original group, was one of the holders of those rights. (#391 P 27) "Ownership of the marks did not stay with McClary when he left the performing group.

Rather, ownership of the marks began in, remained in, and could not be divided from the group, as opposed to its individual members". (#391 P 28) "[I]s undisputed that King and Orange are the only original members of "The Commodores" who have maintained continuity with the performing group since McClary's departure and that the group continued to perform as "The Commodores" in the years after 1985. (#391 p 29). "[O]n this record, we determine that the common-law rights to the marks remained with the group members who continued to use and exert control over the group "The Commodores," and no reasonable juror could have found otherwise (#391 p 29). "The Commodores" remained with the original group when McClary left. The continuing members of the original group, including King and Orange, are still today in a position to control the group. (#391 p 30). The remaining original members controlled the quality and reputation of the band performing as "The Commodores." *Commodores Entm't Corp. v. McClary*, 648 F. App'x 771 (11th Cir. 2016). We agree, given the control sustained by King and Orange, that the original members remaining with the group retained the common-law rights to the marks. (#291 P 31). Here, the parties do not dispute that the common-law trademark in "The Commodores" was originally appropriated by the group. (#291 P 34) King and Orange, have exerted complete control over the current iteration of "The Commodores". (#291 p 35).

"Although there is no evidence of a written assignment, King and Orange both repeatedly testified that they transferred their common-law rights to CEC. The appellate court summarized CEC's ownership in the mark, "At some point, King and Orange

transferred their common-law trademark rights in The Commodores' name and logo to CEC". #391 at p 7).

While McClary did not prevail on this issue, standing was a strong legal defense. Regardless of the issue of McClary's ownership in the mark, if CEC did not have standing the case would have been dismissed. If Orange and King were deemed the owners of the marks ( as they were repeatedly by the courts) only they would have standing to sue for trademark infringement. CEC would not have standing to sue. This was an argument, though unsuccessful, that was supported by the facts and law.

Thomas McClary also had a valid argument that he co-owned the mark. At one time he did. All of the agreements CEC refers to concern use of the mark, not ownership and the subject agreements had expired. McClary did not win, but that cannot be the standard for ruling that this case is exceptional. McClary had a valid defense.

3. **The case was not litigated in an unreasonable manner**

CEC argues that Defendants litigated the case in an unreasonable manner. This is not the case. Neither *CarMax Superstores, Inc, v. Starmax Finance, Inc., 192 F.Supp. 3d 1279* (M.D.Fla 2016) or *High Tech Pet Prods. v. Shenzhen Jianfeng Elec. Pet Prod. Co.*, 2015 U.S. Dist. LEXIS 52298 (M.D. Fla. Feb 12, 2015) compare to the facts and circumstances of the present case. In both of those cases the Defendants defaulted and continued to use the trademarks. Neither defendant ever had a right to ownership or use of the trademarks, not even a right to fair use. That is not the case here.

In this case it is undisputed that Mr. McClary at one time owned the trademarks as the founding member of the Commodores. This is not a case of just anyone using another's trademark. Mr. McClary used the mark he believed in good faith he still had a right to to. He never marketed or tried to pass off his band as "The Commodores". He always used a different name in conjunction with the Commodores mark. Defendants changed the name of the band to fall within the fair use exception to the injunction. Defendants instructed third parties, including their manager, promoters, and venues to market Mr. McClary's performances within the confines of the injunction. When there was a question, such as the scope of the injunction, Defendants indemnified promoters in Europe. When the Court clarified the injunction was world-wide, Defendants complied.

The parties and this Court have always recognized Mr. McClary's role in founding, writing and performing as a Commodore. The Court reiterated this at the last hearing: "No one, myself especially, and no one else involved in this case has ever suggested at all that Mr. McClary was not a significant contributor to the success of the original Commodores, that he ought not to be able to derive economic benefit from the fact that he was a founder of the Commodores, that he is entitled to proper legal association with his work in connection with the founders of the Commodores." Transcript 8-20-18 Pretrial Conference.

The facts of this case weigh heavily in Mr. McClary's favor as opposed to the parties *Carmax* and *High Tech Pet Products* where the defendant had nothing to do with establishing the mark, never held an ownership interest, and never had a right to fair use. In those cases,

the defendants were taking advantage of the trademark and goodwill of a mark they had nothing to do with. In this case, Mr. McClary founded the band that established the mark and the goodwill associated with it.

CEC refers to a number of motions for order to show cause, claiming that McClary was continually violating the injunction. However, Defendants continually conducted business in a manner that they believed complied with the Court's order. McClary used his best efforts to correct any marketing by third parties he did not have control over. One Order held that merely applying for the Commodores common mark in the European Union did not violate the injunction. (180). The Motions for Order to Show Cause were either denied or discharged. (Docs. ## 75, 174, 180, 196, 389, 398, 410, and 421). Therefore the number of motions for OSC filed by CEC does not have any value in assessing whether Defendants litigated the case in an unreasonable manner.

The fact that Defendants exercised their legal right to appeal the preliminary injunction the permanent injunction and to file a petition to the United States Supreme Court also cannot be held against them. This is not an exceptional case under the *Octane* standard.

**c.      Even if the case were "exceptional", Plaintiff failed to meet its burden for an award of fees.**

If the Court concludes that this is an exceptional case, "the decision whether to award attorney's fees is still discretionary." *Dieter v. B & H Indus.,* 880 F.2d 322 at 329. The fees must be reasonable. The starting point for assessing reasonableness is a "lodestar"

13

calculation, which is the number of hours reasonably spent multiplied by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433-37, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). A court should exclude hours that were not "reasonably expended"; for example, hours that were "excessive, redundant, or otherwise unnecessary." *Id.* at 434. The movant must produce evidence to support the hours worked and the rates claimed. *Id.* at 433.

CEC bears not only the burden of establishing this is an exceptional case to gain entitlement to an award, but also the burden of documenting the appropriate hours expended and hourly rates. Sufficient evidence is more than just an affidavit of the attorney who performed the work. *Norman v. Hous. Auth. of City of Montgomery,* 836 F.2d 1292, 1299 (11th Cir. 1988). The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. To make this determination, the party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. *Hensley*, supra at 433.

"The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." "The applicant should maintain billing time records in a manner that will enable a reviewing

court to identify distinct claims." *Hensley* at 434.

Concurring with the Supreme Court's Opinion in *Hensley*, Chief Justice Berger noted, "I read the Court's opinion as requiring that when a lawyer seeks to have his adversary pay the fees of the prevailing party, the lawyer must provide detailed records of the time and services for which fees are sought". *Id. at* 440.

CEC must submit billing records that document the appropriate hours and hourly rates. *Norman v. Housing Authority of Montgomery*, 836 F.2d 1292, at 1303, (11th Cir. 1988). That includes "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate. Further, fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity…. A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case." *Id*.

Redundant hours must be excluded from the reasonable hours claimed by the fee applicant. See *Hensley*, *supra at* 434, Such "hours generally occur where more than one attorney represents a client." *ACLU v. Barnes,* 168 F.3d 423, 432, (11th Cir. 1999) *quoting Norman,* supra at 1301-02. According to Mr. Kent's Declaration, there are at least five attorneys that worked on this case. "Other attorneys from the Trenam law firm have provided services at my specific direct oversight including, but not limited to , Brigid Meranda, Stephanie Leuthauser, Linsay Lopez, Richard Hanshett, and paralegal Suzan

Martin" Kent Decl at ¶5. Mr. Kent does not identify the education and experience of each attorney other than referring the Court to the firm's website. The Court should not have to do independent research to obtain this information.

"The court's order on attorney's fees must allow meaningful review -- the district court must articulate the decisions it made, give principled reasons for those decisions, and show its calculation". *Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir.1985); *Norman v. Housing Authority of Montgomery*, *supra*. In the present case, neither the Court nor the Defendants can perform a meaningful review of the fees because CEC did not provide detailed billing records. In order for courts to carry out their duties in this area, "objections and proof from fee opponents" concerning hours that should be excluded must be specific and "reasonably precise." *Norman*, 836 F.2d at 1301. Defendant cannot make objections without the detailed billing records.

The Declaration of Dean Kent and Jason Barach, and a summary of the total hours expended by each staff member are not sufficient. The Court must also consider Defendants' objections to CEC's bills. However, CEC's counsel has denied Defendants' right to object by omitting their detailed billing records. Defendants and this Court must have the opportunity to analyze the billing records and to calculate the number of hours billed for completing each of various litigation tasks such as drafting the complaint, drafting the briefs, discovery, preparing for and attending status conferences and hearings, preparing for and attending trial, etc.. Entries of this nature are not protected by attorney client privilege.

Defendants have a right to examine the billing records in order to submit meaningful objections to what may be duplicate billing, excessive hours, etc. Fees charged for tasks related to claims or counts other than the trademark dispute should be excluded in order for courts to carry out their duties in this area. Without detailed billing records, showing the task and time billed for each task, neither the Defendants or this Court can make a meaningful review to determine whether the fees are reasonable.

CEC has failed to meet its burden for an award of any fees. It's motion must be denied.

**d.    CEC cannot recover costs**

CEC's request for costs must also be denied as untimely. It was due 14 days after Judgment was entered and it was not filed until three days after the due date.

CEC seeks an award of costs in the amount of $2,957.30 (See Exhibit 15, Bill of costs). The Declaration of Dean Kent refers to the same "summary spreadsheet" that is presented for fees and costs. It suffers the same deficiencies. It is not a detailed bill that is required for a meaningful review by Defendants and the Court. Also, the unidentified total of costs is not included on the Bill of Costs form (Ex. 15). The Bill of Costs form has a line for "Other Costs *Please Itemize*". The Court cannot consider costs that are not included on the Bill of Costs.

///

# III

## CONCLUSION

CEC's motion for attorneys' fees must be denied. It is untimely. That alone supports denial of the motion. However, if the Court considers the untimely motion, eligibility for an award of attorneys' fees under 15 U.S.C. is restricted to "exceptional" cases. The facts and evidence in this case do not fall under the definition of "exceptional" under *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*. Neither of the two Octane factors are present in this case. The case is not exceptional based on the substantive strength of Mr. McClary's litigating position, and the case was not litigated unreasonably.

The cases cited by Plaintiff's counsel are easily distinguished from the facts of the present case. The infringers in those cases never contributed to developing the marks, and never owned them. In this case, there is no dispute that Thomas McClary founded the Commodores and the six original members established the mark and good will of "The Commodores". For a long time, Thomas McClary held rightful ownership in the Commodores trademark. The issue of whether Mr. McClary still had an ownership interest in the marks survived summary judgment and went to trial. After trial, the Court found CEC to be the valid owner of the trademarks. The fact that Mr. McClary did not prevail does not make this case exceptional.

In the event the Court disagrees, CEC is still not entitled to attorneys' fees. It has failed to meet its burden to establish that the fees it is requesting are reasonable. There are

no billing records to know how many hours were spent on specific tasks and the hourly rate charged on those tasks, With at least five attorneys working the case, there is bound to be duplicative charges. Defendants are denied their right to object to the amount because there are no detailed billing to examine. CEC's counsel only provides a "summary spreadsheet" to support its fees. That summary spreadsheet does not meet CEC's burden to submit detailed billing records in support of its motion for fees.

The fees may include time spent on the two appeals, but without detailed billing records, there is no way to know if there are fees claimed for the appeals. Even if there were, the motion is untimely, and does not include the required contemporaneous time records for all work for which a fee is claimed.

CEC's claim for costs is also untimely. Further, other than the itemization on the Bill of Costs, there are no costs incurred that can be considered,

Wherefore, for the reasons set forth above, Defendant respectfully request that CEC's motion fo attorneys' fees and costs be denied in its entirety.

Respectfully submitted September 20, 2018.

>Marie Mirch CA SBN 200833
>Mirch Law Firm LLP
>750 B Street #2500
>San Diego, CA 92101
>(619) 501-6220
>marie@mirchlaw.com
>
>By  /s/ Marie Mirch
>Pro Hac Vice Attorney for Defendants