UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

COMMODORES ENTERTAINMENT
CORPORATION,

    Plaintiff,

v.                                                    Case No. 6:14-cv-1335-Orl-37GJK

THOMAS MCCLARY; and FIFTH
AVENUE ENTERTAINMENT, LLC,

    Defendants.
_____

## ORDER

Defendants Thomas McClary and Fifth Avenue Entertainment, LLC move to modify the scope of the permanent injunction entered by the Court to eliminate its extraterritorial reach altogether or for at least three countries: Mexico, New Zealand, and Switzerland. (Doc. 489 ("**Motion**").) Plaintiff Commodores Entertainment Corporation responded. (Doc. 498.) On review, the Motion is denied.

### I.    BACKGROUND

Plaintiff initiated this trademark infringement action in August 2014 due to Defendants' use of Plaintiff's trademark "The Commodores" during live musical performances. (*See* Doc. 1 ("**Complaint**").) With the Complaint, Plaintiff also moved for a temporary restraining order and preliminary injunction. (Doc. 2.) The Court denied the motion for temporary restraining order and converted the motion to one for preliminary injunction only. (Doc. 6.) On October 15, 2014, the Court granted that motion and

-1-

preliminarily restrained and enjoined Defendants from using the marks at issue in a manner other than fair use, including performing under the name "The Commodores featuring Thomas McClary" or "The 2014 Commodores." (Doc. 56 ("**Preliminary Injunction**").) The Court later clarified the extraterritorial reach of the injunction. (Doc. 141 ("**Clarification Order**").) Specifically, the Court stated:

> The Court's injunction is clear: Defendants cannot use "any of the Marks at issue [in this action] in a manner other than fair use, including performing under the name 'The Commodores featuring Thomas McClary' or 'The 2014 Commodores.'" There are no geographic restrictions. . . . Defendants may make fair use of the Marks, but the injunction was intended to enjoin them—as a U.S. citizen and a U.S. corporation—from infringing the Marks both in the U.S. and in foreign territories.

(*Id.*) Defendants appealed the Preliminary Injunction, including its scope, to the U.S. Court of Appeals for the Eleventh Circuit, which affirmed on April 15, 2016. *See Commodores Entm't Corp. v. McClary*, 648 F. App'x 771 (11th Cir. 2016).

That settled, the Court bifurcated the case into two phases, to first determine trademark ownership before considering any other issues. (*See* Doc. 311.) In Phase I, the Court found Plaintiff owns the trademarks at issue and converted the Preliminary Injunction into a permanent injunction on August 25, 2016. (Doc. 364 ("**Permanent Injunction**").) Defendants appealed the Permanent Injunction to the Eleventh Circuit, contesting, *inter alia*, its extraterritorial application. *See Commodores Entm't Corp. v. McClary*, 879 F.3d 1114 (11th Cir. 2018). Again, on January 9, 2018, the Eleventh Circuit affirmed the scope of the Permanent Injunction. *See id.* at 1139–40.

In Phase II, in relevant part, the Court found in Plaintiff's favor on its claim of trademark infringement under the Lanham Act. (Docs. 422, 426.) Then, after a two-day

jury trial on damages, the jury returned a verdict on January 30, 2019 that awarded Plaintiff damages from Defendants' profits for multiple live musical performances in the United States and Europe in late 2014 and early 2015—the European performances occurred after the Court entered the Preliminary Injunction. (Doc. 475 ("**Verdict**").) Judgment was then entered in favor of Plaintiff and against Defendant Thomas McClary for $29,833.00 and against Defendant Fifth Avenue Entertainment for $13,260.00 on February 4, 2019 based on Defendants' profits alone. (Doc. 476 ("**Judgment**").) Defendants appealed the Judgment and Verdict to the Eleventh Circuit, where it remains pending. (Doc. 480 (**"Notice of Appeal"**).).

Despite Defendants' lengthy and unsuccessful litigation over the scope of the Preliminary and Permanent Injunctions, Defendants now move to modify the scope of the Permanent Injunction under Federal Rule of Civil Procedure 60(b)(5) and (6) based on Mr. McClary's acquisitions in 2017 and 2018 of exclusive licenses to use "The Commodores" trademark in Mexico, New Zealand, and Switzerland. (Doc. 489.) With Plaintiff's response (Doc. 498), the matter is ripe.

## II.   Legal Standards

Under Rule 60(b), a party may seek relief from a final judgment or order based on the following:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is

no longer equitable; or (6) any other reason that justifies relief. *See* Fed. R. Civ. P. 60(b)(1)–(6). Rule 60(b)(5) "provides a means by which a party can ask a court to modify or vacate a judgment or order if 'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 446 (2009) (quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992)). "The party seeking relief bears the burden of establishing that changed circumstances warrant relief, but once a party carries this burden, a court abuses its discretion 'when it refuses to modify an injunction or consent decree in light of such changes.'" *Id.* (citation omitted) (quoting *Agostini v. Felton*, 521 U.S. 203, 215 (1997)).

Rule 60(b)(6) provides another basis for relief. "Relief from 'judgment under Rule 60(b)(6) is an extraordinary remedy'" that requires a showing of "extraordinary circumstances justifying the reopening of [an order]." *Arthur v. Thomas*, 739 F.3d 611, 628 (11th Cir. 2014) (quoting *Booker v. Singletary*, 90 F.3d 440, 442 (11th Cir. 1996)); *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (internal quotation marks omitted). Further, "the decision to grant such relief is committed to the sound discretion of the district judge." *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993) (citations omitted).

### III. ANALYSIS

Defendants move to modify the scope of the Permanent Injunction under Rules 60(b)(5) and (6) to exclude foreign countries generally or Mexico, New Zealand, and Switzerland where Mr. McClary obtained exclusive licenses to use "The Commodores" trademark. (*See* Doc. 489.) They claim that maintaining the extraterritorial scope now in

those countries: (1) violates the sovereignty of foreign nations; (2) is contrary to American jurisprudence; and (3) is improper under the circumstances. (*Id.* at 6–15.) Plaintiff counters that the Motion is untimely and Defendants' creation of "new facts" to relitigate the scope of the Permanent Injunction despite unsuccessful rulings and appeals does not warrant modification of the Permanent Injunction. (Doc. 498, pp. 10–16.) On review, Defendants have failed to show they are entitled to modification of the Permanent Injunction.

The Court begins with the timeliness of the Motion. Under Rule 60(c), a motion seeking relief under Rule 60(b)(5) or 60(b)(6) "must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). Here, the Court finds that it was not. The Motion was filed more than five years after the entry of the Preliminary Injunction (Doc. 56), three years after the Clarification Order confirming its extraterritorial reach (Doc. 141), three years after the Eleventh Circuit's affirmance of the Preliminary Injunction (Doc. 323), two and a half years after the entry of the Permanent Injunction (Doc. 364), and more than a year after the Eleventh Circuit affirmed the scope of the Permanent Injunction (Doc. 391). During this time, unbeknownst to the Court, Mr. McClary worked to obtain exclusive licenses to use "The Commodores" trademark in other countries despite being enjoined from using that name worldwide.[1] (*See* Doc. 489; *see also* Docs. 56, 141.) Mr. McClary obtained these exclusive licenses in July 2017, August 2017, June 2018, and August 2018 for Mexico, New

---

[1] Also during this time, Defendants performed under the name "The Commodores featuring Thomas McClary" throughout Europe *after* the Court entered the Preliminary Injunction (*see* Docs. 475, 476) — another blatant disregard for the Court's orders.

Zealand, and Switzerland. (*See* Doc. 489, pp. 5–6.) Yet only now—almost two years after the first acquisition and nine months from the last—have Defendants moved to modify the scope of the Permanent Injunction. Given the years of litigation on its extraterritorial scope and Defendants' failure to explain this lengthy delay in moving to modify it, the Court finds the Motion was not made "within a reasonable time" of the Permanent Injunction, its affirmance on appeal, or the acquisition of exclusive licenses to use the trademarks. So the Motion is due to be denied as untimely.

Assuming *arguendo* that the Motion was timely, Defendants have not shown that relief under Rules 60(b)(5) or (6) is warranted. The only thing that has changed since the entry of the Permanent Injunction is that Mr. McClary obtained exclusive licenses to use "The Commodores" and "The Commodores Experience" trademarks in Mexico, New Zealand, and Switzerland—in complete disregard of the Court's worldwide injunction that precludes Defendants from performing under those names—and Defendants' continued "financial hardship with respect to potential foreign performances." (*See* Doc. 489; Doc. 489-1, ¶ 11.) Neither provides a sufficient basis for modifying the scope of the Permanent Injunction.

While Defendants contend that maintaining the extraterritorial scope of the Permanent Injunction in light of the acquisition of these licenses violates the sovereignty of foreign nations and is contrary to the law (Doc. 489, pp. 6–15), the Court disagrees. According to the U.S. Supreme Court, extraterritorial enforcement of the Lanham Act is permitted when the infringing activities affect U.S. commerce and "the rights of other nations and their nations are not infringed." *See Steele v. Bulova Watch, Co.*, 344 U.S. 280,

286 (1953); *see also, e.g.*, *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F. 3d 982, 984–85 (11th Cir. 1995). Given this, courts consider the following when determining whether an injunction should have extraterritorial scope: (1) whether the defendant is a U.S. citizen; (2) whether the defendant's foreign conduct had potential and substantial adverse effects in the United States; and (3) whether an injunction would infringe on the sovereignty of other nations. *See Bulova*, 344 U.S. at 285–87; *Int'l Café, S.A.L. v. Hard Rock Café Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1278 (11th Cir. 2001).

In applying these three *Bulova* factors, this Court and the Eleventh Circuit have repeatedly found that the extraterritorial scope of the injunction is appropriate. (*See* Docs. 56, 141); *Commodores Entm't Corp.*, 648 F. App'x at 777–78; *Commodores Entm't Corp.*, 879 F.3d at 1139–40. Most recently, the Eleventh Circuit found:

> In this case, it is undisputed that both parties are citizens of the United States. And given the actual confusion that was experienced in the United States in connection with the New York performance, it is likely that McClary's use of the marks abroad would create confusion both abroad and in the United States. McClary's group is also managed in the United States by an American citizen, and his use of the marks affects [Plaintiff], an American corporation, both at home and abroad.
> As for the final factor, interference with another nation's sovereignty, the question is closer but McClary comes up short. . . . There is no record evidence that Fifth Avenue actually holds a [Community Trademark in the European Union] and, correspondingly, no evidence that the extraterritorial reach of the injunction infringes on a foreign nation's sovereignty.

*See Commodores Entm't Corp.*, 879 F.3d at 1139–40. Now, the Eleventh Circuit's previous analysis still stands for the first two factors as Defendants remain U.S. citizens and the potential and substantial adverse effects of Defendants' infringing conduct remain the same. Indeed, the substantial adverse effects on Plaintiff here based on Defendants' use

-7-

of the marks abroad have been solidified by a jury verdict awarding Plaintiff damages for Defendants' use of the marks during live performances in Europe. (*See* Docs. 475, 476.) So the first two factors are met. With that, the Court turns to the third factor in light of Defendants' acquisition of exclusive licenses to use "The Commodores" trademark in Mexico, New Zealand, and Switzerland.

Under the third factor regarding potential interference on the sovereignty of a foreign nation:

> the Eleventh Circuit has examined whether there is a pending civil suit in a foreign country regarding the validity of the trademark, whether the case would preclude a foreign suit for infringement of a non-U.S. trademark, whether the defendants have claimed that their actions were legal in another country, and whether the defendants would be enjoined from any purely extraterritorial activity having no effect on U.S. commerce.

*Alpacific S.A. v. Diageo Latin Am. & Caribbean, Inc.*, No. 10-cv-23822-CIV-LENARD/O'SULLIVAN, 2012 WL 12844739, at *6 (S.D. Fla. Mar. 28, 2012) (first citing *Int'l Café*, 252 F.3d at 1279; then citing *Levi Strauss*, 51 F.3d at 985 n.1). Here, Defendants have presented no evidence of a pending civil suit in a foreign country regarding the validity of the trademarks or any evidence that this case would preclude a foreign suit for infringement of a non-U.S. trademark. Defendants have not claimed that they could lawfully perform using the marks in Mexico, New Zealand, and Switzerland—indeed Defendants represent that the exclusive licenses for live musical performances in New Zealand and Switzerland are "contingent upon the Court in the present lawsuit lifting the Permanent Injunction that affects Thomas McClary, at least with respect to the countries of New Zealand and Switzerland" (Doc. 489-4, ¶ 9; Doc. 489-1, ¶ 9). And

Defendants are free to engage in purely extraterritorial activity having no effect on U.S. commerce—namely, performing under names that don't infringe on Plaintiff's marks. Thus, the Court does not find that the Permanent Injunction interferes with the sovereignty of another nation to the extent that would preclude its extraterritorial reach.

Even if the third factor swung the other way, the substantial negative effects on Plaintiff in the United States from Defendants' use of the marks abroad due to, *inter alia*, customer confusion and dilution of the marks (*see, e.g.*, Doc. 56, pp. 7–10; Doc. 141) is enough to warrant maintenance of the extraterritorial scope of the Permanent Injunction.[2] *See Bulova*, 344 U.S. at 288 ("Unlawful effects in this country . . . are often decisive."); *Alpacific S.A.*, 2012 WL 12844739, at *6 ("Even if exercising jurisdiction would interfere with [a foreign nation's] sovereignty, the absence of one *Bulova* factor is not necessarily determinative." (citing *Int'l Café*, 252 F.3d at 1278)). So, on balance of all three *Bulova* factors, the Court finds no reason to modify the extraterritorial scope of the Permanent Injunction.

The worldwide Permanent Injunction was implemented to prevent harm to Plaintiff in the United States based on Defendants' use of the marks here and abroad—harm from customer confusion, dilution of the marks, and otherwise. (Docs. 56, pp. 7–9; Doc. 141.) That purpose would be undermined if the Permanent Injunction masqueraded as an invitation for Defendants to obtain licenses to the marks at issue in foreign countries and to then perform under "The Commodores" or other infringing names around the

---

[2] This is particularly true given the damages already awarded to Plaintiff from Defendants' use of the marks abroad. (*See* Docs. 475, 476.)

world. Even after obtaining these licenses, Plaintiff's potential harm remains the same. Defendants' aspirations of profiting from foreign performances under "The Commodores" or other infringing names should have ended with the Eleventh Circuit's affirmance of the Permanent Injunction. *See Commodores Entm't Corp.*, 879 F.3d at 1139–40. Some shows simply cannot go on.

## IV. CONCLUSION

It is **ORDERED AND ADJUDGED** that Defendants' Expedited Motion to Modify the Scope of the Permanent Injunction to Eliminate the Extraterritorial Reach of the Permanent Injunction, or Alternatively to Remove Its Reach from the Countries of Mexico, New Zealand and Switzerland, and Incorporated Memorandum (Doc. 489) is **DENIED.**

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 14, 2019.

ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record