UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**COMMODORES ENTERTAINMENT CORPORATION,**

      **Plaintiff,**

v.                                    Case No:   6:14-cv-1335-RBD-GJK

**THOMAS MCCLARY and FIFTH AVENUE ENTERTAINMENT, LLC,**

      **Defendants.**

REPORT AND RECOMMENDATION

This cause came on for consideration without oral argument on the following motion:

> **MOTION:** PLAINTIFF'S THIRD RENEWED MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO U.S.C. § 1117(A) AND FED. R. CIV. P. 54(D) (Doc. No. 554)
>
> **FILED:** October 27, 2020
>
> **THEREON it is RECOMMENDED that the motion be GRANTED IN PART AND DENIED IN PART.**

**I.  BACKGROUND.**

On October 27, 2020, more than six years after commencing this case, Plaintiff Commodores Entertainment Corporation ("CEC") filed a "Third

Renewed Motion for Attorneys' Fees and Costs Pursuant to U.S.C. § 1117(a) and Fed. R. Civ. P. 54(d)" (the "Motion").[1] Doc. No. 554. The Eleventh Circuit Court of Appeals, in its third opinion in this case ("Commodores III"), succinctly set out its background, and the following history is thus from that opinion. Doc. No. 549.

This case concerns the ownership of the mark "The Commodores," the name of a famous music band. *Id.* at 2. Defendant Thomas McClary was an original member of The Commodores, but left the band in 1984. *Id.* He later formed a musical group that performed as "The 2014 Commodores" and "The Commodores featuring Thomas McClary." *Id.* at 2-3. On August 19, 2014, CEC filed this lawsuit against McClary and Fifth Avenue Entertainment, LLC (collectively, "McClary"), claiming trademark infringement, trademark dilution, passing off, false advertising, and unfair competition. *Id.* at 3; Doc. No. 1. CEC also moved for a temporary restraining order or a preliminary injunction. Doc. No. 549 at 3. McClary raised several counterclaims, alleging, among other things, intentional interference with present and prospective business relationships, trademark infringement, misappropriation of likeness and identity, breach of duty of loyalty and utmost good faith and breach of fiduciary duty, and defamation.[2] *Id.*

---

[1] Plaintiff's first renewed motion for attorney's fees and costs was denied as premature due to the then-pending appeal, and the second renewed motion for attorney's fees and costs was denied as moot due to the filing of this Motion. Doc. Nos. 483, 556.

[2] McClary asserted twelve causes of action in the counterclaim, Doc. No. 40, and fifteen causes of action in the Amended Third Party Complaint, Doc. No. 55.

On October 15, 2014, approximately two months after the case was filed, the Court granted CEC's motion for a preliminary injunction. *Id.*; Doc. No. 56. After the injunction was entered, CEC learned that McClary and his band were marketing upcoming performances in Europe. Doc. No. 549 at 3. Upon CEC's motion for clarification, the Court held that the injunction had extraterritorial application because use of the marks overseas would have a substantial and negative impact on CEC, an American corporation. *Id.* On April 15, 2016, in an eighteen-page opinion, the Eleventh Circuit affirmed the entirety of the preliminary injunction ("Commodores I"). *Id.*; Doc. No. 323.

This Court bifurcated the trial into two phases. Doc. No. 549 at 3; Doc. No. 310. Phase I determined the trademark ownership rights, and Phase II resolved issues of infringement, liability, and damages. Doc. No. 549 at 3. After the defense rested in Phase I, McClary's renewed motion for judgment as a matter of law and his motion to dismiss the case for failure to join an indispensable party were denied. *Id.* The Court granted CEC's motion for judgment as a matter of law, converted its preliminary injunction into a permanent one, and entered final judgment for CEC. *Id.* at 3-4. On January 11, 2018, the Eleventh Circuit, in a fifty-one page opinion, affirmed the order granting judgment as a matter of law to CEC and held that the scope of the injunction was not impermissibly broad, that it lacked jurisdiction to review the denial of the motion to dismiss, and that McClary

did not establish any affirmative defenses ("Commodores II"). *Id.* at 4; Doc. No. 391.

Back in this Court for Phase II, on August 23, 2018, the Court granted partial summary judgment in favor of CEC -- on its trademark infringement claim found in Count 1 -- and granted summary judgment on or dismissed all of McClary's counterclaims and third-party claims. Doc. No. 549 at 4; Doc. No. 426. On January 29, 2019, the trial for Phase II began and addressed: (1) damages on CEC's trademark infringement claim; and (2) CEC's claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Doc. No. 549 at 4. The jury found that McClary had actual notice of CEC's trademark registrations as of June 2009 and that CEC was entitled to damages from McClary's profits resulting from six musical performances. *Id.*; Doc. No. 475. The jury also found that CEC had not shown it suffered damages under FDUTPA. Doc. No. 549 at 4; Doc. No. 475.

Ten months later, on May 20, 2019, McClary moved to modify the permanent injunction, arguing that he had acquired licenses to use the trademark "The Commodores" in Mexico, New Zealand, and Switzerland. Doc. No. 549 at 5; Doc. No. 489. On July 15, 2019, the Court denied the motion, finding that it was not timely and that McClary did not show a sufficient basis for modifying the injunction. *Id.*; Doc. No. 501.

McClary appealed the summary judgment and damages rulings, the denial of the motion to modify the scope of the permanent injunction, and the denial of the motion to join an indispensable party. *Id.* at 2; Doc. No. 480. On July 23, 2020, in a twenty-two page opinion in Commodores III, the Eleventh Circuit affirmed the Court's orders in all respects. Doc. No. 549. Now that CEC has prevailed several times at every level, it moves for an award of attorney's fees and costs under Federal Rule of Civil Procedure 54(d) and 15 U.S.C. § 1117(a). Doc. No. 554. On November 10, 2020, McClary filed a response to the Motion. Doc. No. 555.

## II. ANALYSIS.

### A. Entitlement to Attorney's Fees

Under 15 U.S.C. § 1117(a), "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The Supreme Court interpreted an identical attorney's fees provision in Section 285 of the Patent Act in *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 548, 554 (2014), holding that an "exceptional case" is one "that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." The court determines whether the case is exceptional by considering the totality of the circumstances. *Id.* at 554. A nonexclusive list of factors to consider includes "'frivolousness, motivation, objective

unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" *Id.* at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994), a Copyright Act case with a similar attorney's fees provision).

In *Tobinick v. Novella*, 884 F.3d 1110, 1118 (11th Cir. 2018), the Eleventh Circuit applied *Octane Fitness's* definition of an exceptional case warranting an award of attorney's fees to 15 U.S.C. § 1117(a). The Eleventh Circuit held that the district court did not abuse its discretion in finding that the case was exceptional and an award of attorney's fees was warranted. *Id.* at 1118-19. The party against whom fees were imposed "responded to a number of adverse decisions by accelerating the pace of his filings, repeatedly seeking to add parties and claims and bringing what the court viewed as baseless motions for sanctions and accusations of perjury." *Id.* at 1119. "A case will not qualify as exceptional under the Lanham Act merely because one side has zealously pursued or defended its claim, especially on an issue with no directly controlling precedent." *Id.* In *Tobinick*, however, the non-prevailing party repeatedly multiplied the proceedings by adding new parties and claims, but not producing new arguments or evidence to distinguish the district court's prior rulings. *Id.* at 1118-19.

Here, McClary did not merely zealously pursue his claims. McClary lost every substantive argument he made, both in this Court and three times in the

Eleventh Circuit. The substantive strength of McClary's litigating position and the unreasonable manner in which he litigated this case are inextricably intertwined.

As early as December 2014, the Court described McClary's behavior violating the preliminary injunction as "precipitous" and reflecting "contempt for the orders of the Court." Doc. No. 141 at 4. In the Order denying McClary's request that the Court reconsider its ruling that there is no legal difference between "Commodores Entertainment Corporation," "Commodores Entertainment Corp.," and "Commodore Entertainment Corp.," the Court described McClary's efforts to argue that these differences are fatal to CEC's claims as "misguided" and stated that McClary "unnecessarily complicated this action . . . ." Doc. No. 310 at 3. The Court decried McClary's "machinations [as] unlikely to contribute positively to [his] goal of prevailing in this action, and are certain to delay and complicate a fair adjudication." *Id.* at 3 n.3.

In its Order granting CEC's motion for judgment as a matter of law as to its ownership of the trademark, the Court stated that McClary's "argument that, as an original 'Commodore,' Mr. McClary continued to hold enforceable rights to use and exclude others from using the trademarks at issue irrespective of his membership status is unpersuasive and *is frankly in stark contrast to the law*." Doc. No. 364 at 3 (emphasis added). McClary did not merely lose at the Phase 1 trial, the Court stated, "[T]he facts are so overwhelmingly in favor of [CEC] on that issue

that no reasonable juror could conclude that, since his departure from 'The Commodores' in 1984, Mr. McClary exercised any control over the quality and characteristics of the band." *Id.* at 5.

In the Order finding that McClary violated the injunction by using the phrase "Commodores Experience," this Court stated: "*Notwithstanding the Court's previous admonition* concerning Mr. McClary's placement of 'Commodores' before his own historical association, Defendants *repeat the same trite refrain*—that Mr. McClary may 'accurately reference his historical affiliation with the Commodores.'" Doc. No. 410 at 4 (emphasis added). In the same Order, the Court describes McClary's argument regarding the Eleventh Circuit's opinion as "[n]ot even close." *Id.* at 5 n.2. Although the Court decided not to punish McClary for the violations, it described McClary's arguments as "unpersuasive," "specious," "disingenuous and vexing." Doc. No. 421 at 2, 3. The Court stated that it had, "*[o]n more than one occasion*, . . . laid out the parameters of" McClary's associational reference with The Commodores in his own band name. *Id.* at 1 (emphasis added). It found:

> *Counsel's contrived suggestion* that the medium used absolves Defendants of liability *ignores the basic tenants of fair use*, the focus of which is the name itself, not the medium used. *Defense counsel's narrow, misinformed reading of the Court's November 15, 2016 Order amounts to willful ignorance of the terms of the Permanent Injunction. The argument is pure sophistry.*

- 8 -

*Id.* at 2 (emphasis added). Nonetheless, the Court decided not to punish McClary "for Counsel's 'belief in impossible things,' despite the obvious error of their foolish advice." *Id.* at 4.

In denying McClary's motion to modify the scope of the injunction to exclude Mexico, New Zealand, and Switzerland, the Court found that while the injunction was in place, McClary "performed under the name 'The Commodores featuring Thomas McClary' throughout Europe after the Court entered the Preliminary Injunction (see Docs. 475, 476)—another blatant disregard for the Court's orders." Doc. No. 501 at 5 n.1. McClary also "obtained exclusive licenses to use 'The Commodores' and 'The Commodores Experience' trademarks in Mexico, New Zealand, and Switzerland—in complete disregard of the Court's worldwide injunction that precludes Defendants from performing under those names. . . ." *Id.* at 6. The Court denied the motion to modify the injunction as untimely because it:

> was filed more than five years after the entry of the Preliminary Injunction (Doc. 56), three years after the Clarification Order confirming its extraterritorial reach (Doc. 141), three years after the Eleventh Circuit's affirmance of the Preliminary Injunction (Doc. 323), two and a half years after the entry of the Permanent Injunction (Doc. 364), and more than a year after the Eleventh Circuit affirmed the scope of the Permanent Injunction (Doc. 391).

*Id.* at 5, 6. Finally, the Court stated that McClary's "aspirations of profiting from foreign performances under 'The Commodores' or other infringing names should

have ended with the Eleventh Circuit's affirmance of the Permanent Injunction. *See Commodores Entm't Corp.*, 879 F.3d at 1139–40. Some shows simply cannot go on." *Id.* at 10.

After reviewing the totality of the circumstances of this case, it is determined to be exceptional. It entails over six years of litigation, a preliminary and then permanent injunction, two jury trials, one judgment as a matter of law, and three appeals. McClary lost on all his claims at the dismissal and summary judgment stages, which included his twelve causes of action asserted in the counterclaim, Doc. No. 40, and fifteen causes of action asserted in the Amended Third Party Complaint, Doc. No. 55, and all his defenses. McClary advanced arguments that were objectively unreasonable and failed on several occasions to abide by the injunction. Such behavior should be deterred. The quotes from the Court detailed above demonstrate both the weakness of McClary's position and the unreasonable manner in which this case was litigated. *See Most Worshipful Nat'l Grand Lodge, Free & Accepted Ancient Yorkrite Masons, Prince Hall Origin Nat'l Compact, U.S.A. v. United Grand Lodge GA AF & AYM, Inc.*, 813 F. App'x 455, 461 (11th Cir. 2020) (holding that district court did not abuse its discretion in finding case was exceptional under 15 U.S.C. § 1117(a) where the non-prevailing party had weak and undeveloped claims, filed unnecessary motions, engaged in unprofessional and unreasonable behavior during discovery, "and refused to

comply with court orders . . . ."").[3] Thus, CEC is entitled to a reasonable award of attorney's fees under 15 U.S.C. § 1117(a).

### B. Amount of Attorney's Fees and Costs

CEC does not specify the amount of attorney's fees it is seeking in the Motion. Doc. No. 554. Instead, it relies on the declarations submitted over two years ago in support of its first renewed motion for an award of attorney's fees. *Id.* at 29-31. In its attorney's declaration, the attorney states that it billed CEC $635,408.94. Doc. No. 432-14 at ¶ 18. CEC does not submit any timesheets listing the tasks performed on this matter or any information on the qualifications of the timekeepers, other than its attorney that made the declaration. McClary argues that CEC thus failed to meet its burden, and therefore the Motion should be denied. Doc. No. 555 at 23-24. The parties also dispute the amount of costs that should be awarded to CEC, although McClary does not appear to dispute that CEC is entitled to an award of costs. Doc. No. 554 at 32; Doc. No. 555 at 24.

Motions for attorney's fees should not result in a second major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The order on a motion for attorney's fees must contain a clear and concise explanation of the court's reasoning. *Id.* The

---

[3] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

Court uses the familiar lodestar method in determining a reasonable fee award, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Id.* at 433. The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable. *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). The *Johnson* factors are the following: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills,

experience, and reputation." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996) (quotations and citation omitted). In determining if the requested rate is reasonable, the court may rely on its own knowledge and experience. *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work." *Id.* at 1299 (citations omitted). Instead, satisfactory evidence generally includes evidence of the rates charged by lawyers in similar circumstances or opinion evidence of reasonable rates. *Id.*

As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. In demonstrating that their hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Likewise, a party opposing a fee application should also submit objections and proof that are specific and

reasonably precise. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). A fee opponent's failure to explain with specificity the particular hours he or she views as "excessive, redundant, or otherwise unnecessary" is generally fatal. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (quotations omitted). When a court finds the number of hours billed unreasonably high, a court has two choices: it may review each entry and deduct the unreasonable time or it may reduce the number of hours by an across-the-board cut. *Bivins*, 548 F.3d at 1350.

Once the lodestar is calculated, the court then decides whether an adjustment is necessary. *Bivins*, 548 F.3d at 1350. A downward adjustment "is merited only if the prevailing party was partially successful in its efforts." *Id.* at 1350-51. The *Johnson* factors are considered in determining the lodestar and "should not be reconsidered in making either an upward or downward adjustment to the lodestar . . . ." *Id.* at 1352.

Without a description of the tasks performed or the timekeepers' qualifications, CEC fails to present evidence upon which the Court may fairly

determine the amount of attorney's fees. This is not a basis to deny the Motion, however. *See Norman*, 836 F.2d at 1303 ("Where documentation is inadequate, the district court is not relieved of its obligation to award a reasonable fee . . . .").

The Local Rules that became effective on February 1, 2021, provide for a bifurcated procedure for determining entitlement and amount to attorney's fees. Local Rule 7.01(a). After entitlement is determined,

> the party claiming fees and expenses must file a supplemental motion that:
>
> (1) describes the meet-and-confer effort but preserves any confidential settlement communication;
> (2) specifies the resolved and unresolved issues;
> (3) includes a memorandum of law on any disputed issue;
> (4) includes for any disputed rate or hour:
>     (A) the timekeeper's identity, experience, and qualification;
>     (B) the timekeeper's requested hours;
>     (C) each task by the timekeeper during those hours;
>     (D) the timekeeper's requested rate;
>     (E) lead counsel's verification that counsel charges the rate requested, has reviewed each task, and has removed each charge for a task that is excessive, duplicative, clerical, or otherwise unreasonable;
>     (F) evidence showing the reasonableness of the rates based on the prevailing market rate in the division in which the action is filed for similar services by a lawyer of comparable skill, experience, and reputation; and
> (5) includes for a disputed non-taxable expense:
>     (A) a receipt for, or other evidence of, the expense and
>     (B) lead counsel's verification that counsel incurred the expense.

*Id.* at 7.01(c). The response to the "supplemental motion on amount must detail the basis for each objection, including the identification by day and timekeeper of an

unreasonable claim." *Id.* at 7.01(d). It is recommended that if the Court finds that CEC is entitled to an award of attorney's fees and costs, then the parties should be directed to comply with Local Rule 7.01(c) and (d) for a determination of the amount.

### III. CONCLUSION.

Based on the foregoing, it is **RECOMMENDED** that the Motion, Doc. No. 554, be **GRANTED IN PART AND DENIED IN PART** as follows:

1. That CEC is entitled to an award of attorney's fees under 15 U.S.C. § 1117(a);

2. That the parties be directed to comply with Local Rule 7.01(c) and (d) for a determination of the amount of attorney's fees and costs; and

3. That, in all other respects, the Motion be **DENIED**.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the

Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on March 9, 2021.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties