UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

COMMODORES
ENTERTAINMENT
CORPORATION,

                    Plaintiff,

v.                                                        Case No:   6:14-cv-1335-RBD-GJK

THOMAS MCCLARY and FIFTH
AVENUE ENTERTAINMENT, LLC,

                    Defendants.
_____

REPORT AND RECOMMENDATION

        This cause came on for consideration without oral argument on the

following motion:

| MOTION: | PLAINTIFF'S SUPPLEMENTAL MOTION ON AMOUNT OF ATTORNEYS' FEES AND COSTS (Doc. No. 563) |
|---|---|
| FILED: | June 14, 2021 |

THEREON it is RECOMMENDED that the motion be
GRANTED IN PART AND DENIED IN PART.

I.      BACKGROUND.

        On April 30, 2021, after more than six years of litigation, including

preliminary and permanent injunctions, two jury trials, and three appeals

("Commodores I," "Commodores II," and "Commodores III"), the Court ordered that Plaintiff Commodores Entertainment Corporation ("CEC") is entitled to an award of attorney's fees under 15 U.S.C. § 1117(a) against Defendants Thomas McClary and Fifth Avenue Entertainment, LLC (collectively, "McClary"). Doc. No. 562 at 5. The Court also directed the parties "to comply with Local Rule 7.01(c) and (d) for a determination of the amount of attorney's fees and costs." *Id.*

On June 14, 2021, CEC filed its "Supplemental Motion on Amount of Attorneys' Fees and Costs" (the "Motion"). Doc. No. 563. On June 29, 2021, McClary filed "Defendants' Opposition to CEC's Supplemental Motion for Attorneys' Fees and Costs" (the "Response"). Doc. No. 566. On August 6, 2021, pursuant to the Court's directive, CEC filed a reply to the Response (the "Reply"). Doc. No. 569. CEC asks the Court to award it $700,719.38 in attorney's fees and $12,628.81 in costs.[1]  Doc. No. 563 at 1.

## II.   ANALYSIS.

### A.   Attorney's Fees

Motions for attorney's fees should not result in a second major litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The order on a motion for attorney's fees must contain a clear and concise explanation of the court's reasoning. *Id.* The

---

[1] As detailed in this Report and Recommendation, *infra*, there are discrepancies between these figures and CEC's supporting documents.

Court uses the familiar lodestar method in determining a reasonable fee award, which is calculated by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Id.* at 433. The party moving for fees has the burden of establishing that the hourly rates and hours expended are reasonable. *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988). "In determining what is a 'reasonable' hourly rate and what number of compensable hours is 'reasonable,' the court is to consider the 12 factors enumerated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008). The *Johnson* factors are the following: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill requisite to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and the ability of the attorney; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

The court need not explicitly address the *Johnson* factors, however, and most of them "are already subsumed in the lodestar. . . ." *In re Home Depot Inc.*, 931 F.3d

1065, 1083, 1090 (11th Cir. 2019). The role of the *Johnson* factors is limited when the lodestar method is used. *Id.* at 1090. The number of hours spent on the case reflects the novelty and complexity of the issues. *Id.* at 1083. The hourly rates reflect the attorneys' skill and experience. *Id.* "As for the results obtained, this factor should be folded into the quality-of-representation factor. This is so because the results obtained are relevant to attorney's fees only if those results are attributable to counsel's performance, rather than, say, the other side dropping the ball." *Id.* (citation omitted). Enhancing the fee based on the quality of the representation should only be done "in the rare cases where the fee applicant demonstrates that the 'superior attorney performance is not adequately taken into account in the lodestar calculation.'" *Id.* (quoting *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 554 (2010)). "[A]fter counsel proposes an hourly rate based on the prevailing market rate in the community, courts may consider the *Johnson* factors to determine if the proposed rate accurately reflects the true worth of counsel." *Id.* at 1091. "[T]he *Johnson* factors are relevant only in the rare cases where they are not fully captured in the lodestar." *Id.*

"[A] reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir. 1996) (quotations and citation omitted). In determining if the requested rate is

reasonable, the court may rely on its own knowledge and experience. *Norman*, 836 F.2d at 1299-1300, 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."). "The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates," which must be more than just "the affidavit of the attorney performing the work." *Id.* at 1299 (citations omitted). Instead, satisfactory evidence generally includes evidence of the rates charged by lawyers in similar circumstances or opinion evidence of reasonable rates. *Id.*

As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. In demonstrating that their hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so the district court can assess the time claimed for each activity." *Norman*, 836 F.2d at 1303. Likewise, a party opposing a fee application should also submit objections and proof that are specific and reasonably precise. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). A fee opponent's failure to explain with specificity the hours the opponent views as

"excessive, redundant, or otherwise unnecessary" is generally fatal. *Scelta v. Delicatessen Support Servs., Inc.*, 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (quotations omitted). When a court finds the number of hours billed unreasonably high, a court has two choices: it may review each entry and deduct the unreasonable time, or it may reduce the number of hours by an across-the-board cut. *Bivins*, 548 F.3d at 1350.

Once the lodestar is calculated, the court then decides whether an adjustment is necessary. *Bivins*, 548 F.3d at 1350. A downward adjustment "is merited only if the prevailing party was partially successful in its efforts." *Id.* at 1350-51. The *Johnson* factors are considered in determining the lodestar and "should not be reconsidered in making either an upward or downward adjustment to the lodestar . . . ." *Id.* at 1352.

        1.     <u>Calculating the Lodestar</u>

        *a.*     *Reasonable Rates*

The following chart represents the rates CEC requests for each timekeeper in the Motion:

| TIMEKEEPER | POSITION | RATE PER HOUR |
|---|---|---|
| Richard Leisner | senior counsel | $176.90 |
| Richard Hanchett | shareholder | $157.10 |
| Suzan Martin | paralegal | $92.10 |
| Brigid Merenda | partner | $238.00 |
| Dean Kent | shareholder | $318.40 |
| Lindsay Lopez | shareholder | $223.90 |
| Elizabeth Saunders | paralegal | $88.80 |
| Alicia Koepke | shareholder | $335.00 |
| Catherine DiPaolo | shareholder | $205.10 |
| William McBride | associate attorney | $183.30 |
| Jacqueline Prats | associate attorney | $320.70 |
| Monica Mason | senior counsel | $370.00 |
| Ashlyn Banks | associate attorney | $100.00 |
| Bradley Muhs | associate attorney | $179.40 |
| Stephanie Leuthauser | attorney | $211.60 |
| Maja Lacevic | attorney | $250.00 |
| Lauren York | paralegal | $62.50 |
| Jacob Felman | attorney | $27.90 |
| Kelly Ruoff | shareholder | $147.10 |

| Anne Leonard | associate attorney | $107.00 |
| --- | --- | --- |

Doc. No. 563 at 8-15. McClary does not argue that the requested rates are unreasonable. Doc. No. 566. Based on the undersigned's knowledge and experience concerning reasonable rates, plus the *Johnson* factors, the requested rates are reasonable.

The parties present the Court with a conundrum regarding the hourly rates. CEC's requested amount of attorney's fees is based on discounted rates set forth in the Motion.[2] Doc. No. 563 at 8-15. In asking for reductions to the requested amount, however, McClary used higher rates set forth in the timekeeping records. Doc. No. 566 at 11-23. For example, McClary asks that $360 be reduced from the requested amount as time incurred before counsel was hired. Doc. No. 566 at 11. On its Objection Chart, McClary is referring to the time entry by Dean Kent for 1 hour for a total amount of $360. Doc. No. 566-1 at 44. But in the Motion, CEC requests a rate of $318.40 per hour for Kent. Doc. No. 563 at 10. CEC also does not provide a total amount of fees without the rates being reduced. Doc. Nos. 563, 569. But McClary does not provide calculations of the number of hours that should be

---

[2] CEC requests an award of $700,719.38 in attorney's fees, but calculating the hours and rates as set forth in the Motion results in total of $700,770.320. Doc. No. 563 at 8-15. As CEC requested the lower amount, that is what will be honored.

deducted. Doc. No. 566. This discrepancy prevents the Court from formulating a precise amount of attorney's fees by deducting the amount requested by McClary from the amount requested by CEC. Although CEC was given an opportunity to, and did, file a Reply, it failed to object or even raise this discrepancy. Doc. No. 569. In fact, CEC did not contest McClary's calculations of the proposed reductions. *Id.*

   *b.*  *Reasonable Number of Hours*

   Once the reasonable hourly rate is determined, the Court must then decide the reasonable number of hours expended to determine the lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Any reductions to the requested hours must be concisely and clearly explained to allow for appellate review." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008).

   CEC was awarded its attorney's fees under 15 U.S.C. § 1117(a), which states, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." Doc. No. 557 at 16; Doc. No. 562 at 5. Thus, the Lanham Act requires a determination of reasonableness in awarding attorney's fees, just as the lodestar does, and McClary's arguments for reducing the number of hours CEC requests are reviewed for reasonableness. *Hensley v. Eckerhart*, 461 U.S. at 433. CEC requests an award of $700,719.38 in fees for 2,823.5 hours.[3]

---

[3] The discrepancy in the amount requested is addressed in footnote 2, *supra*. CEC also incorrectly lists the total hours as 2,825.3 on its Time & Expense Summary. Doc. No. 563-2 at 27.

i.      Previous Requested Amount

McClary argues that CEC should be confined to its previous request of an award of attorney's fees of $635,408.94. Doc. No. 566 at 12. That request was made in CEC's motion for an award of attorney's fees three years ago on September 10, 2018 and repeated in its motion for an award of attorney's fees filed on October 27, 2020, which the Court granted as to entitlement. Doc. No. 432 at 15; Doc. No. 432-14 at ¶¶ 12, 18; Doc. No. 554 at 31; Doc. No. 562. Since that time, the second jury trial occurred, judgment was entered for CEC, McClary appealed for the third time, a motion to modify the injunction was filed, and issues continued to be litigated regarding McClary's compliance with the injunction. Doc. Nos. 465, 468, 476, 480, 489, 515. In finding that CEC is entitled to an award of attorney's fees under 15 U.S.C. § 1117(a), the Court also provided CEC with an opportunity to supplement its request with a motion to quantify the amount. Doc. No. 562 at 5. Because the supplement was authorized by the Court, McClary's argument is rejected.

ii.      Pre-Hire Fees and Duplicate Entries

McClary argues that fees should not be assessed for the one hour of work done before CEC's counsel was hired. Doc. No. 566. McClary provides no legal support for this argument, and it is therefore rejected.

McClary also points to two duplicate entries totaling 7.4 hours. Doc. No. 566-1 at 44. CEC admits that these hours are duplicative and agrees to their reduction. Doc. No. 569 at 5. Thus, 3.7 hours should be deducted.

### iii.    The "New York Action"

McClary states that a reduction of $457.95 of the more than $700,000 requested should be made because entries in the billing records identify a "New York action," and McClary does not know what this is. *Id.* at 16. In the Reply, CEC states, "The terminology of a 'New York action' was used early in the engagement to determine if seeking an injunction in New York state would be appropriate, but it was determined [McClary] had returned to Orlando and personal jurisdiction/venue issues would be problematic in any New Y[ork] related suit." Doc. No. 569 at 5. CEC states that the phrase also refers to issues that "were addressed in 2016 by undersigned counsel regarding judgment recordation and/or collection issues related to royalties that issue from New York state entities." *Id.* CEC sufficiently demonstrates that its entries referencing a "New York action" are reasonable and should not be deducted.

### iv.    Appellate Work Not Requested at the Appellate Level

McClary argues that CEC should not be awarded its attorney's fees for the first appeal, Commodores I, and for work regarding McClary's Petition for Writ of Certiorari to the United States Supreme Court because CEC did not file motions

in the Eleventh Circuit or the Supreme Court for an award of attorney's fees. Doc. No. 566 at 17, 19. CEC's response regarding McClary's argument is that the "appeals were reasonable and necessarily incurred by CEC to uphold this Court's rulings protecting its intellectual property rights and properly recoverable as part of the litigation as such issues go directly to CEC's claims and rights under the Lanham Act and protection of its trademark rights." Doc. No. 569 at 6. Neither party cites any law to support their positions. Doc. No. 566 at 17, 19; Doc. No. 569 at 6.

In the binding case *Common Cause/Georgia v. Billups*, 554 F.3d 1340 (11th Cir. 2009), the party seeking an award of attorney's fees for work performed on an interlocutory appeal to the Eleventh Circuit argued that the district court abused its discretion in denying those fees. 554 F.3d at 1356-57. The Eleventh Circuit held, "The district court lacked authority to award attorney's fees and costs for work performed before this Court." *Id.* at 1356. The Eleventh Circuit's Rule 39-2 "governs an award of attorney's fees and requires, absent statute or court order, the filing of a request in this Court, not the district court . . . ." *Id.* at 1356-57. Rule 39-2 requires that a motion for an award of attorney's fees for work performed before the Eleventh Circuit must be filed within a certain time. *Id.* at 1357. "Rule 39-2(e) permits the district court to award attorney's fees in connection with an appeal following a remand for further proceedings . . . ." *Id.* But that subsection

"applies in the limited situation when a decision on remand is the result of a reversal on appeal." *Id.* The court held that "[t]he preliminary injunction . . . was not reversed on appeal and does not fall within the plain language of this exception." *Id.* Thus, the district court was not authorized to assess attorney's fees for services rendered on interlocutory appeal. *Id.*

Here, there is no dispute that CEC did not file its request for an award of attorney's fees for its work in Commodores I with the Eleventh Circuit. Therefore, this Court may not assess those fees. CEC does not dispute McClary's contention that it incurred 204.3 hours on Commodores I. Doc. No. 566-1 at 45-58; Doc. No. 569.

Neither the Federal Rules of Appellate Procedure nor the Rules of the Supreme Court of the United States contain procedures for requesting an award of attorney's fees for work done before the Supreme Court. Finding no prohibition on this Court's ability to award such fees, McClary's argument that CEC is not entitled to its fees incurred in litigating McClary's petition for writ of certiorari to the Supreme Court is rejected.

v.    Appellate Work Requested at Appellate Level

The Eleventh Circuit granted CEC's requests for this Court to consider an award of attorney's fees in Commodores II and Commodores III. Doc. No. 563-8 at 2-3. McClary argues that CEC is not entitled to its fees incurred in litigating

Commodores II because the Eleventh Circuit did not find that the appeal was frivolous or brought in bad faith and the appeal "does not fall under the 'exceptional' circumstances which this Court held applied to the defense of the case in the District Court." Doc. No. 566 at 18. Regarding Commodores III, McClary states that the timesheets attached to the Motion do not contain any entries for this aspect of the litigation and therefore CEC is now time-barred from seeking such fees. *Id.*

Under 15 U.S.C. § 1117(a), "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." The court determines whether the case is exceptional by considering the totality of the circumstances. *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 548, 554 (2014). In the Report and Recommendation recommending that CEC be entitled to an award of attorney's fees under 15 U.S.C. § 1117(a), the Court relied on the appellate litigation in addition to the litigation in this Court. Doc. No. 557 at 6-7, 10. A reasonable amount of attorney's fees to be awarded to CEC under 15 U.S.C. § 1117(a) includes those incurred in litigating Commodores II and III.

McClary argues that if fees are awarded for Commodores II, then the fees should only be awarded for shareholder Lindsay Lopez's time, because she "wrote the brief and argued the appeal." Doc. No. 566 at 18. McClary lists the other

timekeepers on Commodores II as incurring 117.3 hours.[4]  Doc. No. 566-1 at 58-75. CEC does not counter this argument or contend that McClary incorrectly listed the time its counsel spent on Commodores II. Doc. No. 569. Thus, a reasonable number of hours for the work done on Commodores II excludes 117.3 of the hours claimed.

vi.    Trademark Courts

McClary argues that CEC should not recover its fees for work incurred before other trademark courts, including the Trademark Trial and Appeal Board, the European Union, or the Canadian Trademark Board because the "charges were not necessarily incurred in the United Stated District Court case before this court . . ." Doc. No. 566 at 19. CEC states that fees by associate attorney William McBride incurred on March 12 and 13, 2015 are properly recoverable because they "were directed to the 's' or no 's' issues raised by Defendants in this matter as a defense to the Lanham Act claims." Doc. No. 569 at 7. CEC demonstrates that McBride's time is reasonable.

CEC does agree that the remainder of the fees sought for actions in other trademark courts can be removed because they "appear to be 'block billed' with no delineation between matters directed to this Litigation and matters before 'Trademark Courts.'" *Id.* Thus, those hours will be removed. McClary claims, and

---

[4] Omitted from this figure is 2.3 hours listed for Marie Tomassi, Doc. No. 566-1 at 68, as CEC does not list Tomassi as a timekeeper in its Motion, Doc. No. 563 at 8-15.

- 15 -

CEC does not dispute, a total of 7.9 hours expended on other trademark courts, excluding McBride's time. Doc. No. 566-1 at 79-80.

### vii.     The Nevada Case

McClary argues that CEC improperly includes time spent on the case he brought against William King in Nevada. Doc. No. 566 at 20. McClary includes the parties' voluntary stipulation of dismissal of the Nevada case, which states that each party will bear their own attorney's fees and costs. Doc. No. 566-1 at 142. CEC argues that the issues in the Nevada case were inextricably intertwined with the issues in this case, but provides no examples from its timesheets of work that it cannot separate between the two. Doc. No. 569 at 7. Because the parties agreed to bear their own attorney's fees in the Nevada case, those hours incurred are not reasonable. McClary lists 35.3 hours incurred on the Nevada case. Doc. No. 566-1 at 80-83. CEC does not dispute this amount. Doc. No. 569.

### viii.    Travel Time

McClary argues that CEC should not be awarded its counsel's travel time because it employed counsel outside of Orlando. Doc. No. 566 at 20-21. CEC argues that it did not bill for travel time from Tampa, where its counsel is based, to Orlando. Doc. No. 569 at 8. Regarding other travel, CEC argues that the travel time was necessary as it included travelling to Atlanta for oral arguments and to New York and Alabama, where various witnesses live. *Id.*

McClary's objections chart shows two entries regarding traveling to Orlando for pretrial proceedings. Doc. No. 566-1 at 84. These hours, which total 6.5, have not been shown to be reasonable. Regarding the travel for the appeals, however, as McClary filed them, he cannot now complain about being responsible for CEC's counsel's travel to Atlanta to address those appeals. McClary makes no argument regarding CEC's travel time to Alabama and New York. The hours other than those for traveling to Orlando are reasonable.

ix.     Email with Arizona Counsel

McClary argues that the fees should be reduced by a billing entry regarding CEC's counsel emailing Arizona counsel. Doc. No. 566 at 21. CEC does not argue that this work is reasonable. Doc. No. 569. Thus, McClary demonstrates that a reasonable number of hours claimed does not include the four-tenths of an hour incurred by emailing Arizona counsel. Doc. No. 566-1 at 85.

x.     Carlos Keyes Contempt

McClary argues that the work incurred regarding an order of contempt against Carlos Keyes was "not reasonable or necessary in the case against Thomas McClary and Fifth Avenue Entertainment and should not be allowed." Doc. No. 566 at 22. CEC states that Keyes was McClary's agent and that he sent a blast email in violation of the preliminary injunction and avoided service and being deposed. Doc. No. 569 at 8. These hours are reasonable.

### xi.    Stricken Documents

McClary argues that because the Court struck CEC's motions for partial summary judgment, that time should be excluded. Doc. No. 566 at 22. CEC contends that the time should not be excluded because the time incurred in preparing the stricken motions "allowed for significant attorneys' fees savings when such issues were corrected and refiled by CEC in a single motion as directed by the Court's Order . . . ." Doc. No. 569 at 9. CEC states that the work in creating the stricken motions was used for "the form, heart, soul, and foundation for the omnibus summary judgment motion filed, which this Court granted." *Id.*

A reasonable number of hours does not include all the time expended in drafting six motions for partial summary judgment when one was sufficient. Nonetheless, a complete reduction of all the time spent in preparing the six motions is not warranted. Rather, a reduction of twenty-five percent of the total is appropriate to account for the effort in drafting six separate motions. McClary states, and CEC does not contest, that 71.3 hours is the amount incurred on the stricken documents, twenty-five percent of which is 17.8. Doc. No. 566-1 at 86-89.

### xii.    Non-Attorney Timekeepers

McClary argues that "CEC has failed to meet its burden to establish that the fees sought for paralegal work is for work traditionally done by an attorney." Doc. No. 566 at 23. McClary states that CEC did not submit any affidavits by the

paralegals and that "the work described is more 'clerical or secretarial' in nature as opposed to legal work." *Id.* CEC argues that the paralegals "assist[ed] in discovery, document production, trial preparation, and with regard to assistance at the trial with technology, jury selection, and presentation to the jury of exhibits" and that they "were instrumental in the orderly production and review of responsive documents, exhibit preparation, pretrial submissions, and the orderly presentation of evidence at the two jury trials, with great success." Doc. No. 569 at 9. Because McClary failed to identify the paralegals' entries by day and timekeeper under Local Rule 7.01(d) so that the Court may evaluate the entries regarding whether they are more clerical or secretarial, Doc. No. 566-1 at 90, he does not establish that their time is unreasonable.

Considering the above issues raised by McClary, a reasonable number of hours omits the hours expended on the following: duplicate entries; Commodores I; work other than that of Lopez on Commodores II; work done before other trademark courts, excluding that of McBride on March 12 and 13, 2015; work expended on the Nevada case; travel time from Tampa to Orlando; emailing Arizona counsel; and a portion of the effort in drafting six separate motions for partial summary judgment. The chart below sets forth the total amount of hours that should be deducted as unreasonable:

| DEDUCTIONS | HOURS |
|---|---|
| Duplicative Entries | 3.7 |
| Commodores I | 204.3 |
| Commodores II, excluding Lopez's time | 117.3 |
| Other Trademark Courts | 7.9 |
| Nevada case | 35.3 |
| Travel from Tampa to Orlando | 6.5 |
| Arizona Email | .4 |
| Stricken Documents | 17.8 |
| Total | 393.2 |

Thus, a reasonable number of hours is the claimed 2,823.5 less 393.2, which results in 2,430.3 hours.

> c.      *Lodestar Amount*

"When faced with a massive fee application, . . . an hour-by-hour review is both impractical and a waste of judicial resources." *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994). When a request for an award of attorney's fees is voluminous, the court may employ an across-the-board reduction rather than an hour-by-hour analysis. *Id.*

The Motion is voluminous. CEC requests an award of $700,719.38, representing 2,823.5 hours of work. Doc. No. 563 at 1, 8-15; *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) ("Appellant submitted 569.30 hours for compensation. Those hours are extensive enough that we do not expect the district court or the magistrate judge to conduct an hour-by-hour analysis in this case."); *Padurjan v. Aventura Limousine & Transp. Serv., Inc.*, 441 F. App'x 684, 687 (11th Cir. 2011) ("The more than $200,000 Padurjan seeks in attorneys' fees is indication enough that this case is voluminous.").

CEC's requested amount of attorney's fees, $700,719.38, includes reasonable rates. Doc. No. 563 at 1. But it does not include a reasonable number of hours. A reasonable number of hours is 2,430.3, or 86% of CEC's claimed hours.

As detailed above, the parties applied different rates in calculating a reasonable attorney's fee award. To further complicate matters, CEC requests twenty different rates for twenty different timekeepers. Doc. No. 563 at 8-15. Also as noted above, the Motion is voluminous, thus making an across-the-board reduction appropriate. Given the undersigned's overall sense of the suit, the discrepancies and lack of clarity in the briefing, and the *Johnson* factors, rough justice in calculating the lodestar entails applying the percentage of CEC's claimed hours that are reasonable to the dollar amount it requests. *See generally Fox v. Vice*, 563 U.S. 826, 838 (2011) ("The essential goal in shifting fees (to either party) is to

do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time."). Therefore, it is determined that the lodestar is 86% of the requested $700,719.38, which equals $602,618.67.

### 2.   Reductions to the Lodestar

McClary argues that CEC's award of attorney's fees should be reduced because it only recovered on a portion of its claims and because of McClary's financial situation. Doc. No. 566 at 23-24. McClary does not cite any law supporting its argument that the fee award should be reduced because CEC did not prevail on all its claims. *Id.* Under the Lanham Act, the attorney's fees awarded are to be reasonable, 15 U.S.C. § 1117(a), and based on the intertwining nature of the claims, an amount including time incurred on the entirety of the litigation is reasonable.

McClary relies on *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 917 (11th Cir. 1982), to support his argument that the fee award should be reduced based on his inability to pay. Doc. No. 566 at 23. In *Durrett*, the court held "that a district court awarding attorney's fees to a prevailing Title VII defendant should consider not only the applicable *Johnson* guidelines, but also, as a limiting factor, the plaintiff's financial resources." *Durrett v. Jenkins Brickyard, Inc.*, 678 F.2d 911, 917 (11th Cir. 1982). In such a case, the plaintiff's ability to pay should be considered

in determining whether "a reduced assessment would fulfill the deterrent purpose of [the statute awarding attorney's fees to the prevailing party] without subjecting the plaintiff to financial ruin." *Id.* The deterrent purpose of the statute is "to protect employers from burdensome litigation having no legal or factual basis." *Id.* at 916.

*Durrett* is distinguishable because it is limited to cases involving prevailing Title VII defendants, and this is a prevailing Lanham Act plaintiff case. McClary does not cite to any cases permitting reduction of an attorney's fees award under the Lanham Act due to the defendant's inability to pay. Doc. No. 566 at 23-24. He also does not provide any details regarding his financial situation in his affidavit. Doc. No. 566-1 at 145-46. Instead, he makes the conclusory assertion that he "cannot afford the fees and costs CEC is seeking." *Id.* at 145.

McClary fails to demonstrate that a reduction of the lodestar is appropriate. Thus, CEC is entitled to recover $602,618.67 against McClary as a reasonable amount of attorney's fees under 15 U.S.C. § 1117(a).

**B.  Costs**

CEC requests an award of costs under Rule 54, Federal Rules of Civil Procedure, and 28 U.C.S. § 1920. Doc. No. 563 at 16. Rule 54(d)(1) provides that "[u]nless a federal statue, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party." "28 U.S.C. § 1920 defines the costs

which may be allowed to the prevailing party under Fed. R. Civ. P. 54(d). . . ."

*Parkes v. Hall*, 906 F.2d 658, 659 (11th Cir. 1990).

Section 1920 provides:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

CEC requests an award of costs of $12,628.81. Doc. No. 563 at 16. McClary objects to the following costs: fees for transcripts ($11,244.40); "fees for disbursement for printing" ($240.00); and appellate costs ($136.65). Doc. No. 566 at 26.

With respect to deposition transcript expenses, parties are entitled to recover costs for depositions necessarily obtained for use in the case, but not for deposition costs incurred for convenience, to help in thorough preparation, or only for investigative purposes. *U.S. E.E.O.C. v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir.

2000). In requesting an award of $11,244.40 for transcripts, CEC lists the deponents and the amount requested for each. Doc. No. 563 at 17. But this amount totals $11,099.95.[5] *Id.* CEC also fails to state how each deposition was necessarily obtained for use in the case. *Id.* McClary concedes that "portions of the depositions of Larry Blake, James Tarver, James Carmichael, Sal Michaels, Lionel Richie, Carlos Fernandez, James Burke and Sharon Klein were presented at trial." Doc. No. 566 at 25. McClary states that the cost for an original and one copy of these transcripts is $3,176.20, and does not object to this amount being awarded if the Court allows deposition costs. *Id.* at 25-26. The following chart demonstrates the deposition costs for one original and one certified copy of the depositions McClary states were used at trial:[6]

| DEPONENT | COST |
|---|---|
| Larry Blake | $222.50 |

---

[5] The total amount stated for James Tarver's deposition in the Motion contains a clerical error, as the receipt lists the total as $361.50, Doc. No. 563-7 at 20, and the Motion states the amount is $316.50, Doc. No. 563 at 17. This does not explain the $144.45 difference in the amount requested and the amount listed.

[6] Parties are not entitled to recover charges for delivery, expedited transcription, or for mini-transcription versions, which are for the parties' convenience. *Rodriguez v. Marble Care Intern., Inc.*, 862 F. Supp. 2d 1316, 1320 (S.D. Fla. 2012) (entitled to recover standard costs, but not court reporter appearance fees, shipping, handling or expedited delivery costs and only entitled to recover costs for exhibits and condensed versions of transcripts if their necessity is demonstrated); *Frasca v. NCL (Bahamas) Ltd.*, No. 12--20662-]CIV, 2014 WL 4206697, at *4 (S.D. Fla. Aug. 25, 2014) ("Fees for expedited or condensed transcripts, rough drafts, compressed and mini script versions, and CD ROM's with ASCII are not reimbursable under § 1920, where such services are for the convenience of counsel."), *rev'd and remanded on other grounds*, 654 F. App'x 949 (11th Cir. 2016).

| | |
|---|---|
| James Tarver | $266.50 |
| James Carmichael | $413.85 |
| Sal Michaels | $453.90 |
| Lionel Richie | $342.00 |
| Carlos Fernandez | $631.90 |
| James Burke | $356.00 |
| Sharon Klein | $489.50 |
| Total | $3,176.15 |

Doc. No. 563-7 at 20, 26, 28, 30, 31, 32, 33, 35. Thus, CEC is entitled to recover $3,176.15 in deposition costs from McClary.

McClary argues that CEC is not entitled to recover the $240 fees for disbursement and printing "because there are no supporting receipts or documentation." Doc No. 566 at 26. CEC states that the $240 is for six $40 witness fees that are listed on the Bill of Costs, not for printing. Doc. No. 563 at 17. CEC includes receipts for witness fees for Richard Wolfe ($500), Margaret McCalman ($40), Richard Orsini ($62), Beryl Thompson-McClary ($41), Sharon Klein ($42), and Larry Blake ($40), which exceed $240. Doc. No. 563-7 at 6, 10, 12, 14, 16, 18; *see also* Doc. No. 563-5 at 2. CEC thus sufficiently demonstrates entitlement to $240 in witness fees.

Finally, McClary argues that CEC is not entitled to appellate costs of $136.65 "because there are no supporting Mandate showing this amount." Doc. No. 566 at 26. In its exhibits supporting the Motion, CEC includes the bills of costs taxed in its favor by the Eleventh Circuit of $43.05 and $93.60. Doc. No. 563-8 at 4-5. CEC is entitled to recover its appellate costs of $136.65.

CEC demonstrates that it is entitled to the following costs:

| DESCRIPTION | AMOUNT |
| --- | --- |
| Fees for the Clerk and Marshal | $480 |
| Deposition Costs | $3,176.15 |
| Ricoh Copying Costs[7] | $527.76 |
| Witness Fees | $240 |
| Appellate Costs | $136.65 |
| Total | $4,560.56 |

Doc. No. 563 at 16-19. CEC thus demonstrates that it is entitled to an award of costs of $4,560.56.

## III.    CONCLUSION.

Based on the foregoing, it is **RECOMMENDED** that the Motion, Doc. No. 563, be **GRANTED IN PART AND DENIED IN PART** as follows:

---

[7] McClary did not address this cost in the Response. Doc. No. 566 at 24-26.

1. That CEC is entitled to an award of attorney's fees of $602,618.67 and costs of $4,560.56; and

2. That, in all other respects, the Motion be **DENIED**.

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from the date the Report and Recommendation is served to file and serve written objections to the Report and Recommendation's factual findings and legal conclusions. Failure to serve written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.

**RECOMMENDED** in Orlando, Florida, on September 9, 2021.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties